Evans *v.* Cheatham.

Opinion delivered February 2, 1931.

*J. B. Milham,* for appellant.

*W. D. Swaim* and *A. F. Auer,* for appellee.

Mehaffy, J. Appellants, Charles Appleton and Cordie Appleton, his wife, were the owners of lots 17 and 18 in block 39, Mineral Heights Addition to the town of Mineral Springs, Arkansas. The Appletons had been indebted to appellee, B. D. Cheatham, since 1924, the indebtedness being secured by chattel mortgage. Only a small amount of this indebtedness had been paid when in 1928 a renewal note was given, and to secure the payment of this renewal note, the amount of which was approximately $640, the Appletons executed and delivered to appellee Cheatham a mortgage on the above described lots. Cheatham delivered this mortgage to Appleton, who agreed to take it to the clerk's office, have it recorded, and pay the expenses for having it recorded. However, after the execution of the mortgage, the Appletons executed a mortgage to the Georgia State Loan Association and had it put on the record before Cheatham's mortgage was recorded.

When the note of the Appletons to Cheatham became due, it was not paid, and Cheatham brought suit in the Howard Chancery Court to foreclose his mortgage.

After suit was brought, it was agreed between the Appletons and Cheatham that the Appletons would give

Cheatham a quitclaim deed to the two lots covered by his mortgage, subject to the mortgage to the Georgia State Loan Association, for approximately $900. The Appletons claim that the lots were worth about $1,800.

On the same day that this quitclaim deed was made and delivered to Cheatham, the Appletons executed a deed of trust to the appellant, C. N. Evans. These conveyances were executed in the city of Hot Springs on the second day of December. Cheatham mailed his quitclaim deed to the clerk of Howard County, and it was recorded on the fourth day of December. Appleton did not deliver the deed of trust to Evans, but immediately took it to the clerk's office in Howard County, and had it put on record ahead of the quitclaim deed to Cheatham. This suit was brought by Cheatham to have the deed of trust to Evans canceled, alleging that it was a fraudulent conveyance and a cloud on his title.

The Appletons and Evans filed answer, denying that there was any fraud, and alleging that they were indebted to C. N. Evans in the sum of $500 and to Evans' mother in the sum of $200, and that this deed of trust was given to secure this indebtedness.

The appellant, Evans, is a brother of Mrs. Cordie Appleton, and it was claimed that they owed her brother $500 and her mother $200.

At the time of the execution of the quitclaim deed Appleton told Cheatham that there were no mortgages or liens on the property or no indebtedness except $800 which they owed the Georgia State Loan Association and an insurance bill due of $24 and two back payments to the loan association of $26. This evidence is undisputed.

Appleton testified, however, that he told Cheatham he was going to secure his brother-in-law, Evans, but that he was going to pay this off. This is denied by Cheatham.

The Appletons do not undertake to show by the evidence what they owed Mrs. Appleton's mother the $200 for. Appleton and Evans, however, testify that

when they lived in Hot Springs Evans had a small grocery store and turned it over to Appleton, and Appleton operated it, agreeing to pay Evans for it sometime, but they don't say when. They testify also that they estimated the value of the groceries to be about $500. This deal for the grocery store, if made at all, was made sometime before the quitclaim deed, and there is no reason given why they had not given note and mortgage to Evans before this.

The indebtedness to the Georgia State Loan Association, together with the debt due Cheatham, was probably as much or more than the lots could have been sold for at the time.

The contention of appellants is that Cheatham gave up his security, delivered his mortgage and papers to Appleton, and agreed to take a quitclaim deed subject not only to the Georgia State Loan Association, but subject also to the deed of trust to Evans. In other words, that, when he had the security and a suit to foreclose was pending, and no defense to it, and the property of sufficient value to pay Cheatham's debt and the debt of the loan association, without any reason he gave this up, dismissed his suit, and accepted a quitclaim deed subject to the indebtedness of both the loan association and the Appletons.

There is some conflict in the evidence, but it would serve no useful purpose to set it out at length.

The chancellor found in favor of the appellee and entered a decree canceling the mortgage from the Appletons to Evans, and this appeal is prosecuted to reverse the decree of the chancellor.

Appellants cite and rely on the case of *Hempstead* v. *Johnson,* 18 Ark. 123. It is true the court said in that case the circumstances of mere suspicion leading to no certain result would not be sufficient to establish fraud, but it was also said in that case that neither the law court nor the chancery court insisted upon positive and express proof of fraud; that courts of equity would

grant relief upon the ground of fraud established by presumptive evidence.

They next call attention to the case of *Davis* v. *Jones,* 67 Ark. 122, 53 S. W. 301. The chancery court in that case, however, found that the transaction was free from fraud, either actual or constructive, and the finding of the chancellor was affirmed by the Supreme Court.

The appellants call attention to a number of other cases which we do not deem it necessary to discuss. These questions have been discussed and determined by this court so often that we do not deem it necessary to refer to all of them or discuss them.

If the deed of trust in this case was not set aside, there is no question but what it would hinder, delay, and defeat Cheatham in the collection of his debt. Our statute provides that every conveyance made or contrived with the intent to hinder, delay, or defraud creditors or other persons, shall be void. Section 4874, C. & M. Digest.

"While the general rule is that a fraudulent intent on the part of the grantor is necessary to bring conveyances within the terms of the statutes, it is well settled that fraud may arise as an inference of law, and that, when a conveyance is made under such circumstances that the result must necessarily be to hinder and delay creditors, it will be presumed that such was the intent of the transferor in making it." 12 R. C. L. 537.

As to whether the deed of trust in the instant case was fraudulent is a question of fact, and the finding of the chancellor is conclusive here unless contrary to the preponderance of the testimony. *Mente & Co., Inc.,* v. *Westbrook,* 181 Ark. 96, 24 S. W. (2d) 976; *Pattison Orchard Co.* v. *S. W. Ark. Utilities Corp.,* 179 Ark. 1029, 18 S. W. (2d) 1028; *Sternberg* v. *Blaine,* 179 Ark. 448, 17 S. W. (2d) 286; *Cain* v. *Mitchell,* 179 Ark. 556, 17 S. W. (2d) 282.

There is no other disputed question in the case. It is undisputed that the Appletons owed Cheatham; that the debt was secured by mortgage; that suit had already

been brought for the purpose of foreclosing the mortgage; that there was an indebtedness of $800 or $900 to the Georgia State Loan Association; that the property was insufficient to pay appellee after the payment of the Georgia State Loan Association if Evans' mortgage is valid. In fact there is no dispute in the evidence except as to whether the conveyance to Evans was fraudulent.

The chancellor found that this conveyance was fraudulent, and his finding is not against the preponderance of the evidence. The decree is therefore affirmed.