M. L. SIGMON FOREST PRODUCTS, Inc.
*v.* Harold E. SCROGGINS, Sr.

5-5023                                446 S. W. 2d 198

Opinion delivered November 3, 1969

*Catlett & Henderson*, for appellant.

*Clifton Bond*, for appellee and cross-complainant.

Carleton Harris, Chief Justice. From 1955 to 1967, appellee Harold E. Scroggins leased from the appellant, M. L. Sigmon Forest Products, Inc., by written agreement, certain lands known as the Florence Farm, consisting of approximately 1,000 acres in Drew County, Arkansas. This land was suitable, and was used, for the production of rice and other agricultural products. On January 18, 1967, appellant, hereafter sometimes called Sigmon, and Scroggins entered into a new written lease, which provided, *inter alia*:

''Lessor hereby leases and lets to Lessee for a term of two (2) years commencing on the 18th day of January, 1967, the following described lands lying and situated in Drew County, Arkansas, to wit: [description of lands follows].''

Certain covenants were entered into by the parties which are not at issue in this litigation. The lease provided that, for rental, lessee would pay one-half of the rice and one-fourth of all other crops grown on the lands.

On December 13, 1968, by registered mail with return receipt requested, the company wrote Scroggins, advising appellee that the lease agreement, under its terms would end on January 18, 1969, and that appellant would expect to take full possession of the farm on that date. Mrs. Scroggins signed the receipt on December 16, 1968. Thereafter, on December 30, Scroggins filed a complaint in the Chancery Court of Drew County, alleging that he was a tenant for years under the lease agreement, and was entitled to six months' written notice of termination, with such notice to end with the rental period in 1971. It was further asserted that Scroggins had done substantial work in preparing the lands for the 1969 crop year; that more than six months prior to January 18, 1969, appellee had attempted to ascertain from the company whether the lease would be continued or terminated, but without success. It was further asserted that the annual rental value of the farm was $30,000.00, and that Sigmon should be enjoined from taking possession of the Florence Farm or interfering with appellee's possession. On the day of the filing of the complaint, a temporary restraining order was issued against appellant, its officers, agents and employees, enjoining them from trespassing upon said lands, or from interfering in any manner with appellee's possession, pending a final hearing, the order, however, being conditioned upon the furnishing of a $30,000.00 bond by appellee; this requirement was complied with on the same date.

On January 17, 1969, Sigmon answered the complaint and counterclaimed, asserting that the lease agreement definitely fixed the time that the lease was to terminate, and that no notice from Sigmon to Scroggins was necessary, even though appellant had given a written notice demanding possession of the lands on January 18, further, that Scroggins was:

"* * * willfully holding over the lands described in said lease agreement after termination date thereof and 30 days' previous written notice to quit given by defendant to plaintiff requiring possession of said lands by defendant, which conduct and action on the part of plaintiff entitle defendant to recover double the annual rent for such lands."

Thereafter, Sigmon moved for a summary judgment, supported by the affidavit of Glenn M. Cooper, president and chief executive officer of appellant company, setting out the execution of the lease, and attaching a copy thereto; further alleging that the value of the crops grown on the leased land as one year rental was $30,000.00. The affidavit further set out that the lease agreement had expired, and that no other agreement, written or oral, had been entered into between the parties; that the notice, previously mentioned, had been sent to Scroggins, who had received it on December 16. Finally, the affiant stated that he was entitled to receive double the yearly rent of the lands for all of the time lessee should keep him out of possession by the willful holding over after the termination of the lease. Appellee responded to the motion, alleging that there were genuine issues as to material facts, and the response was supported by the affidavit of Scroggins. In such affidavit, Scroggins stated that the value of the crops grown on the leased lands as one year rental was approximately $30,000.00; that the lease agreement contained no provision for the termination of the lease, and no provision regarding the giving of notice, written or oral. It was stated that Scroggins was entitled to six months' written notice, rather than the lease automatically ter-

minating at the end of the two-year period; further, that substantial work in preparation of the land for the 1969 crop year, and the purchase of seed, fertilizer and supplies, had already been accomplished, which would be for naught if Sigmon were allowed to take possession. Finally, Scroggins stated that he had endeavored to ascertain the intentions of the company more than six months prior to January 18, 1969, but the president of appellant company had failed and refused to advise of its intentions.

The court, acting upon the motion, responses, the affidavits, and exhibits thereto, found that the lease was for a term certain; that the appellee was not a holdover tenant prior to the expiration of the same, and thus was not entitled to six months' notice to quit; however, the court added:

"'* * * That notice by Sigmon to Scroggins of the termination of said lease was unnecessary, but with Scroggins remaining in possession of the demised premises, claiming a right therein under the lease, it was necessary that Sigmon give the three days notice to 'quit and surrender possession' under Section 34-1503, of the Statutes of Arkansas to formally terminate said lease and end the landlord-tenant relationship existing between the parties.'"[1]

A decree was entered, making permanent the temporary restraining order of December 30, 1968, "until such time as the landlord and tenant relationship between the parties is terminated by proper notice and

[1]Referring to Section 34-1503, the court said:

"'* * * This notice was not given, but notice under Section 50-509, supra, was given by Sigmon to Scroggins. This notice had the effect of continuing the landlord-tenant relationship between the parties on a basis of a tenancy at will, sufferance or year to year. That in default of notice under Section 34-1503, supra, with notice being given under Section 50-509, supra, and Sigmon not pleading for possession of the demised premises, the tenancy existing between the parties should be protected and the possession of Scroggins preserved by injunction."

action.'' The decree further released Scroggins and his bondsmen from liability upon the bond for injunction filed in the amount of $30,000.00. From such decree, appellant brings this appeal. Appellee cross-appeals, contending that there are genuine issues, material to the case, which should be determined by testimony.

The court was in error in the conclusions reached. In the case before us, an estate for years was created by the lease. In 32 Am. Jur. Landlord and Tenant § 61, we find:

''An estate for years has been defined as an interest arising from an agreement or contract for the possession of lands or tenements for some definite period. Every estate which must expire at a period certain and fixed in advance, by whatever words created, is an estate for years. A lease for years has been defined as a contract between the lessor and lessee by which the lessor contracts to grant the possession and enjoyment of land, or hereditaments of a demisable nature, for a period of years certain, and in most cases, the lessee agrees to render to the lessor a rent in money, or any other kind of payment, at the end of stated periods of a year or more, during the term.''

Also, it is pointed out in Section 993:

''At common law and under statute, a notice to quit is necessary to terminate periodic tenancies, such as those from year to year or month to month, and such statutes are frequently made applicable to tenancies at will, and with respect to the maintenance of certain actions and proceedings, such notice is essential. The reason of the requirement is the indefiniteness and uncertainty of the duration of such a tenancy and the protection of each of the parties thereto against capriciousness on the part of the other. When, however, the parties have by agreement fixed the time for the lease to terminate, notice to quit is unnecessary because the reason for it ceases.''

The same view is expressed in 51C C. J. S. Landlord and Tenant § 89(3)a.:

"In the absence of a statute or provision in the lease to the contrary, no notice of termination or notice to quit need be given by the lessor in order to terminate a lease for a term of years or other definite period, nor need any notice of termination or of intention to quit be given by the lessee."

Numerous other authorities are to the same effect. Accordingly, there was no necessity that Sigmon give Scroggins any notice at all. It may be that appellant, through its officers, contemplated that Scroggins might not surrender the premises, but would hold over, and the notice was sent as a matter of complying with Section 50-509, hereafter set out, or it may be that the notice actually was only in the nature of an accommodation or courtesy, i. e., to let Scroggins know that appellant intended to take possession of the lands. Be that as it may, there is no reason, legal or otherwise, why appellant should be penalized for giving the notice; certainly, appellee was not prejudiced thereby, and we are unable to agree with the trial court that this written notice given under Section 50-509, had the effect of continuing the landlord-tenant relationship between the parties on the basis of "a tenancy at will, sufferance or year to year." Ark. Stat. Ann. § 50-509 (1947) provides as follows:

"If any tenant for life or years, or if any other person who may have come into possession of any lands and tenements under or by collusion with such tenant, shall wilfully hold over the same, after the termination of such term and thirty [30] days' previous notice in writing given, requiring the possession thereof, by the person entitled thereto, such person so holding over, shall pay to the person so kept out of possession double the yearly rent of the lands or tenements so detained, for all the time he shall keep the person entitled thereto out of possession."

The giving of the 30 days' notice before the filing of the suit (in order to claim double damages) was not necessary in the instant case[2] for the reason that the complaint was filed by appellee on December 30, and in answering, it was necessary under our statute, Ark. Stat. Ann. § 27-1121 (Repl. 1962) that appellant file any counterclaim that it might have, or be thereafter barred. See also *Pettit* v. *Kilby,* 232 Ark. 993, 342 S. W. 2d 93. We hold that, under the terms of the lease instrument, no notice was necessary, and that, under Section 27-1121, no 30 days' previous notice was necessary in order for appellant to seek double damages.

There is, however, one fact definitely left for determination. Section 50-509 provides that one who willfully holds over, thus preventing possession to the person entitled thereto, shall pay the person so kept out of possession double the yearly rent of the lands detained *for all the time he shall keep the person entitled thereto out of possession.* This record does not reflect for how long the appellant has been, or will be, kept from possession, and this fact will have to be determined at another hearing. Also, while there is nothing in the record before us which reflects that appellee acted in good faith in not surrendering the premises, inasmuch as the case is being remanded anyway, we think it proper to permit Scroggins to offer competent evidence of his reasons for withholding possession. In *Lesser-Goldman Cotton Company* v. *Fletcher,* 153 Ark. 17, 239 S. W. 742, this court pointed out that, under the statute:[3]

"*** to entitle the landlord or lessor to double rents after the termination of the lease term, the holding over by the tenant must be done wilfully. The stat-

---

[2]Appellee asserted that he did not receive the notice until December 19. While the receipt was signed by Mrs. H. E. Scroggins, there is no absolute showing that this was appellee's wife.

[3]The court was referring to Section 6557 of Crawford and Moses Digest, which is identical with Section 50-509.

ute is highly penal, must be strictly construed, and cannot be extended by intendment beyond its express terms. A holding over by the tenant under the *bona fide* belief that he has the right to do so, even though he were mistaken, is not a wilful or contumacious holding under the statute, where the undisputed facts show, as they do here, that there were reasonable grounds for such belief."

The decree is reversed and the cause is remanded for the determination of the two issues mentioned.

It is so ordered.