In re Jimmy BAUGH, Debtor.

Neale M. BEARDEN, Plaintiff,

v.

Jimmy M. BAUGH and Marion Baugh, Defendants.

Tommye Baugh, Intervenor.

Bankruptcy No. PB 84–144M.
Adv. No. 85–76M.

United States Bankruptcy Court,
E.D. Arkansas,
Pine Bluff Division.

Feb. 19, 1986.

Charles W. Baker, Rose Law Firm, P.A., Little Rock, Ark., for debtor, defendants and intervenor.

Richard L. Ramsay, Ramsay, Cox, Lile, Bridgforth, Gilbert, Harrelson & Starling, Pine Bluff, Ark., for plaintiff.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

Jimmy Baugh (Jimmy) filed a voluntary petition for relief under the provisions of Chapter 11 on June 20, 1984. On February 20, 1985, Neale M. Bearden (Neale) filed a complaint against Jimmy and Marion Baugh (Marion), Jimmy's father, to set aside an alleged fraudulent transfer of cash from Jimmy to Marion in the sum of $86,251.48. The transfer allegedly occurred in December 1982. Jimmy filed a counterclaim against Neale seeking damages for the alleged wrongful termination of a lease. Thereafter, Tommye Baugh (Tommye), Jimmy's wife, was permitted to intervene. Tommye alleged ownership of $12,500 of the funds allegedly transferred to Marion.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(H), although principles of state law govern the outcome. This Memorandum Opinion shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule of Procedure 7052.

This case involves an incorrect procedure. Neale is admittedly not the proper party to bring this cause of action on behalf of the estate. A cause of action pursuant to 11 U.S.C. § 544(b) is property of the estate which vests in the debtor-in-possession upon the filing of the petition. 11 U.S.C. § 541(a)(1); 4 *Collier on Bankruptcy* ¶ 541.10 (15th ed. 1983). A debtor-in-possession under Chapter 11 has all of the rights, powers, and duties of a trustee. 11 U.S.C. § 1107. A debtor-in-possession, therefore, possesses the rights granted a trustee under 11 U.S.C. § 544.

Jimmy, as a debtor-in-possession, apparently did not desire to sue his father. Therefore, the parties agreed to allow this action to be brought on behalf of the estate in the name of a creditor. The defendants have waived any objection they may have had to this incorrect procedure. The proper remedy of a creditor when confronted with a debtor-in-possession who declines to pursue his fiduciary duties under Chapter 11 is to petition for the appointment of a trustee. *In re Ford*, 36 B.R. 501 (Bkrtcy. W.D.Ky.1983).

### I

### FRAUDULENT CONVEYANCE

11 U.S.C. § 544(b) provides as follows: (b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

Ark.Stat.Ann. § 68–1302 (Repl. 1979) provides as follows:

Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods and chattels, or things in action, or of any rents issuing therefrom, and every charge upon lands, goods or things in action, or upon the rents and profits thereof, and

every bond, suit, judgment, decree or execution, made or contrived with the intent to hinder, delay or defraud creditors or other persons of their lawful actions, damages, forfeitures, debts or demands, as against creditors and purchasers prior and subsequent, shall be void. The burden of proof is on the party alleging a fraudulent conveyance, and the fraud must be proved by clear and convincing evidence. *Bank of Sun Prairie v. Hovig*, 218 F.Supp. 769 (W.D.Ark.1963); *Ouachita Electric Coop Corp. v. Evans-St. Clair*, 12 Ark.App. 171, 672 S.W.2d 660 (1984). Fraud is never presumed. *Rees v. Craighead Investment, Co.*, 251 Ark. 336, 472 S.W.2d 92 (1971). While fraud may be established by circumstantial evidence, the circumstances must be so strong and well connected as to clearly show fraud. *Harris v. Shaw*, 224 Ark. 150, 272 S.W.2d 53 (1954). *Farmers Co-Op Association of Talmage, Kansas v. Strunk*, 671 F.2d 391 (10th Cir.1982).

Intent that makes a conveyance fraudulent must be participated in by both the grantor and the grantee. *Bank of Sun Prairie v. Hovig*, 218 F.Supp. at 769; *Wright v. Aaron*, 214 Ark. 254, 215 S.W.2d 725 (1948). For a transfer to withstand attack as fraudulent it must be for adequate consideration and made in good faith. *Wright v. Aaron*, 214 Ark. at 254, 215 S.W.2d at 725; *Bank of Sun Prairie v. Hovig*, 218 F.Supp. at 769; *In re Locke*, 50 B.R. 443 (Bkrtcy.E.D.Ark.1985); *Seib's Hatcheries, Inc. v. Lindley*, 111 F.Supp. 705 (W.D.Ark.1953), *aff'd*, 209 F.2d 674 (8th Cir.1954). Intent to defraud on the part of the vendor may be established by evidence of the pendency of litigation against the vendor. *Bank of Sun Prairie v. Hovig*, 218 F.Supp. at 769.

Factors typically attendant to a fraudulent conveyance are the insolvency of the transferor, inadequate or fictitious consideration, retention by the debtor of the property transferred, secrecy or concealment, and the fact that the disputed transaction was conducted in a manner differing from the usual transaction. *Harris v. Shaw*, 224 Ark. at 150, 272 S.W.2d at 53; *Ouachita Electric Co-op Corp. v. Evans-St. Clair*, 12 Ark.App. at 171, 672 S.W.2d at 660.

11 U.S.C. 544(b) allows a trustee to assert a cause of action to set aside a transfer based on state law if a cause of action existed in favor of an actual creditor on the date the petition was filed. 5 *Collier on Bankruptcy* ¶ 544.03 (15 ed. 1985). There is no dispute here that a cause of action, if one exists, was in favor of Neale on the day the petition was filed.

Jimmy is a thirty-seven year old farmer who resides in Lincoln County, Arkansas. Jimmy has been a farmer for fifteen years. Marion is sixty-seven years old and also a farmer. Jimmy and Marion do not own land jointly, although they farm separately and together in an informal partnership. They each own separate equipment which is available for use by both. For instance, Jimmy purchased an International Harvester 5288 tractor in April of 1979 for a total cash price of $42,000. Title was placed in Jimmy's name. The down payment consisted of a $10,000 credit for a used International Harvester 1566 tractor which was Marion's property. The new tractor was used by Jimmy and Marion in both their individual and joint farming operations. No record was kept of the tractor usage, and no consideration for use of the tractor was paid by either party to the other.

On November 10, 1982, the Arkansas Court of Appeals affirmed the decision of the Chancery Court of Lincoln County, Arkansas, which had ordered Jimmy to specifically perform a contract to purchase real property.[1] On December 21, 1982, Jimmy transferred $86,251.48 cash to Marion. Subsequently, the real property in question was sold at a judicial sale and on December 7, 1983, a deficiency judgment was entered in favor of Neale against Jimmy for $152,-548.00. Neale then brought an action in state court to set aside the transfer of the $86,251.48. Jimmy filed bankruptcy on

---

1. *Baugh v. Johnson*, 6 Ark.App. 308, 641 S.W.2d 730 (1982).

June 20, 1984, while the state court action was pending.

Jimmy testified that he was very close to his father and that they had farmed together for a long time. Over the course of the last fifteen years, Marion paid many of Jimmy's farming expenses. Jimmy introduced as an exhibit a summary of checks and invoices dating from April 4, 1975, through December 10, 1980, totalling $100,975.90. Proof was also received that Marion bought a Hobbs trailer for $5,949.00 for Jimmy in 1974 and made payments on Jimmy's home totalling $13,156.10. Other bills which Marion paid for Jimmy were in the amount of $19,859.13. Total bills paid by Marion on Jimmy's behalf were $126,784.13. Jimmy, Tommye, and Marion all characterized these payments as loans from Marion to Jimmy.

Marion's testimony was that in December 1982, demand was made by Simmons Bank of Pine Bluff (Simmons) that he repay a loan of $50,000 or $60,000 which was due. As an alternative, the bank would accept a mortgage on Marion's farm. Marion testified that he did not want to mortgage his farm, so he asked Jimmy to repay some of the monies Marion had "loaned" Jimmy over the years. Jimmy testified that in response to this request, he transferred the $86,251.48 to Marion, not for the purpose of defrauding Neale, but as a repayment of a legitimate debt to his father. Marion testified that he paid Simmons the $50,000 or $60,000 he owed and used the remainder to pay his bills.

Marion initially testified that he did not have sufficient cash to pay the bank when demand was made, but later admitted that he did have sufficient cash to pay the bank without the use of Jimmy's money. Marion also admitted he "reloaned" Jimmy $35,000 a little over a year after he received the $86,251.48.

Jimmy admitted in his testimony that at the time of the transfer, December 21, 1982, he was in a bad financial condition. Jimmy's financial statement reflected that he was insolvent as of December 30, 1982, by $277,829.34. The bankruptcy schedules reflect that as of the date of the filing of the petition, June 20, 1984, Jimmy was still insolvent.

The Court believes the testimony that Marion gave Jimmy money and that Marion paid some of Jimmy's bills over the years but the Court does not believe these payments were loans or that Marion ever intended that he be paid back. The evidence indicates that these payments were gifts from a father to a son in consideration of love and affection. Jimmy acknowledged that in years past he did reciprocate from time to time by paying some of Marion's farming expenses, but he kept no record of these payments. Marion kept some of the proceeds from the sale of Jimmy's crops from time to time, but no record was kept of any amounts. None of these sums were deducted from the schedule of payments from Marion to Jimmy. Jimmy's alleged indebtedness to Marion was never shown on Jimmy's or Marion's financial statements. No note or other document was ever executed to evidence the existence of this alleged indebtedness.

■ Although fraud is never presumed, where it is shown that the debtor while insolvent voluntarily conveys property to a near relative, such conveyance is prima facie evidence of a fraudulent conveyance. The burden of coming forward with the evidence to show that the transfer was not fraudulent shifts to the debtor. *Rice v. Rice,* 125 F.Supp. 900 (W.D.Ark.1954); *Evans v. Cheatham,* 183 Ark. 82, 34 S.W.2d 1076 (1931); *Leonhard v. Flood,* 68 Ark. 162, 56 S.W. 781 (1900); *Matter of Freedman,* 693 F.2d 50 (8th Cir.1982); *In re Locke,* 50 B.R. at 443.

■ The transfer of this substantial sum of money to Marion accomplished two things. First, the money was removed from the reach of Jimmy's creditors. Second, the transfer allowed Jimmy the use of the money as he needed it during a period of time in which he was insolvent. This kind of transfer lacks the necessary good faith to insulate it from attack under state law as a fraudulent conveyance.

## II

### CLAIM OF TOMMYE BAUGH

Tommye and Jimmy have been married for seventeen years. When she and Jimmy married, Tommye received some cash as a wedding present and put it into a savings account in Jimmy's name. Over the years, she would make contributions to the account from money her father gave her. There was no particular reason for maintaining the account in Jimmy's name.

In 1979, the balance in the savings account was used, in part, to purchase a certificate of deposit which was titled jointly in Jimmy's and Tommye's names and which ultimately became a certificate of deposit in the sum of $24,892.29. Tommye did not know how much of the $24,892.29 could be traced to money she contributed. She testified that her husband had contributed some of the money and that some was earned from the accrual of interest and the rest was given to her by her father. In December 1982, this certificate of deposit was cashed. The proceeds became part of the fraudulent conveyance to Marion. Tommye claims one-half interest in the $24,892.29 if the Court orders the transfer to Marion set aside. She does not claim any interest in the money if the conveyance to Marion is allowed to stand.

 A creditor of a debtor who is a depositor on a joint bank account must join the co-depositor in any proceeding to reach the joint account and allow the depositor and co-depositor an opportunity to show what portion of the funds actually belong to the co-depositor. *United States v. National Bank of Commerce*, ── U.S. ──, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985), *on remand*, 772 F.2d 438 (8th Cir.1985). The burden of proving contribution to the joint account is on Tommye. *See Hayden v. Gardner*, 238 Ark. 351, 381 S.W.2d 752 (1964). Under Arkansas law, a creditor who levies on a joint bank account is not subrogated to the depositor's power to withdraw all of the account and may seize only the portion of the account which belongs to the debtor. *Hayden v. Gardner*,

238 Ark. at 351, 381 S.W.2d at 752; *Pine Bluff National Bank v. Parker*, 253 Ark. 966, 490 S.W.2d 457 (1973); *United States v. National Bank of Commerce*, ── U.S. ──, 105 S.Ct. at 2919, 86 L.Ed.2d at 565, *on remand*, 772 F.2d at 438.

 When property is acquired by persons who are husband and wife and title is placed in both names, a presumption arises that there was a gift of one-half interest in the property so acquired even if the consideration comes from one spouse or the other. *Ramsey v. Ramsey*, 259 Ark. 16, 531 S.W.2d 28 (1975); *McIntire v. McIntire*, 270 Ark. 381, 605 S.W.2d 474 (1980).

 The Court finds that Tommye has established that she owned at least one-half of the money in question by gift or personal contribution. There was no testimony which contradicted her testimony of personal contribution to the account, nor was there any testimony to rebut the presumption of a gift from one joint depositor to the other. The burden of coming forward with evidence to rebut the presumption of a gift of 50% of the joint account shifted to Neale once evidence of the establishment of the joint account was introduced. During the period of time the money was accumulated, Tommye performed the duties of a housewife, a mother, a farm hand and a bookkeeper. She never held outside employment during the marriage. In the absence of proof of fraud or other evidence to the contrary, it is not unreasonable that Jimmy intended to remunerate Tommye for her efforts by making a gift to her of one-half the proceeds of this certificate of deposit. In fact, Tommye may have actually been the one to make the gift to Jimmy, but the evidence on this point is inconclusive.

Therefore, of the $86,251.48 transferred to Marion, the sum of $12,446.15 is determined not to be a fraudulent conveyance and is determined to be Tommye's property. The plaintiff will be given judgment for $73,805.33 against Marion Baugh for the use and benefit of creditors of the estate.

## III

### JIMMY BAUGH'S COUNTERCLAIM

 Jimmy filed a counterclaim against Neale and alleged that Neale wrongfully terminated Jimmy's lease of Neale's 180 acre farm. The counterclaim is without merit. Jimmy farmed a 180 acre farm which was owned by Neale for the crop year 1982 pursuant to a written lease which expired by its express terms on December 31, 1982. Jimmy alleged that he received no notice of Neale's intentions not to renew the lease for the crop year 1983 and in reliance on her silence, he prepared the land for the 1983 crop at an expense to him of $8,226.00 before Neale made demand that he vacate the land. Jimmy also seeks judgment for his anticipated profit of $12,000 for the crop year 1983. The law requires no notice of termination if the parties by agreement have fixed the time for the lease to terminate. *M.L. Sigmon Forest Products, Inc. v. Scroggins,* 247 Ark. 493, 446 S.W.2d 198, (1969), *appeal after remand,* 250 Ark. 385, 465 S.W.2d 673 (1971). No new lease was agreed upon by the parties. Therefore, Jimmy had no legal right to possession of the property after December 31, 1982, and any expense he incurred in connection with his possession of the property after this time is not the responsibility of Neale. Jimmy is not entitled to the anticipated profit for the crop year 1983 because he had no lease with the owner of the land for that year.

A separate judgment will be entered pursuant to this Memorandum Opinion.

IT IS SO ORDERED.