ANDY KILLIAN ET UX *v.* HAYES
BROTHERS LBR. CO., INC.

5-5584                                              470 S.W. 2d 939

Opinion delivered October 4, 1971

*W. E. Billingsley,* for appellants.

*Murphy, Arnold & Blair,* for appellee.

FRANK HOLT, Justice. The appellants and the appellee were prospective purchasers of a farm. The seller conveyed the property to the appellee. Consequently, the appellants instituted this action against the appellee (and the seller) alleging that appellants had a valid contract of sale with the seller and that the property was deeded to appellee by fraud and connivance on the part of the seller and the appellee. The appellants sought cancellation of appellee's deed, specific performance of appellants' contract with the seller, and by amendment asked that a constructive trust be decreed in appellants' favor. In the alternative, appellants sought damages from the seller. The chancellor found that the transaction was not fraudulent and that the appellee-purchaser had no notice, either actual or constructive, of any binding contract between the appellants and the seller. The chancellor dismissed appellants' complaint as to the appellee-purchaser. However, damages were awarded to the appellants against the seller who does not appeal.

For reversal of the decree in favor of the appellee, the appellants contend that: The chancellor erred in finding that the appellee, acting by and through its agent, general manager and president, Bobby K. Hayes, did not have notice, either actual or constructive, of the fact that the land had been sold to appellants prior to appellee's purchase.

The land involved is a 355-acre farm. Appellant Andy Killian learned from his father-in-law, Leonard M. Brown, that the land was for sale. On January 18, 1969 Killian telephoned Charlie A. Langston and orally entered into an agreement with him for the purchase of the farm which was owned by Langston and his wife as an estate by the entirety. The Langstons live in Texas. The agreed sale price was $10,750 cash and it was agreed that the State Bank of Calico Rock would handle the transaction and that on the following Monday morning when the bank opened he, Killian, would have the purchase money in the bank. Mr. E. C. Rodman, a bank official, was advised of the transaction by Killian who told Rodman that his father-in-law, Brown, would be in the bank Monday morning and make the necessary arrangements.

Brown went to the bank on this date and increased his and his wife's personal bank account to the extent of about one-half of Killian's orally agreed purchase price. The bank agreed to loan Killian the balance. On January 23 appellant Andy Killian was informed that the bank had received from Langston the necessary papers for preparation of the deed. Langston had also written an accompanying letter to the bank stating that he had sold the property for $10,750 cash to appellants. The deed of conveyance was prepared by the bank and on February 5 it was forwarded to Langston and his wife for their signatures.

At about this time Wayne Fountain told Hayes, his employer, that he understood from Brown that the land had been sold. Fountain, who rented the land, asked Hayes' advice as to whether he would have to move or could he stay until his rent was up. In Fountain's presence, Hayes immediately called Langston and inquired if the place had been sold. Hayes testified that Langston told him: "No. I thought I had it sold, but they never come up with no money, and I can't get nothing done.*** I want to sell it.*** Well, he said he hadn't seen any money and he hadn't signed no papers and he was looking for some money. He said the man that would come up with the money would get the place."

It appears that the following day, February 6, Hayes, with Fountain, viewed the land and then called Langston and agreed to pay $11,750 cash for the farm. Hayes testified as to the second phone call: "Well, he said, 'have you got the money?' and I said, 'yeah' and he said, 'when do you want to fix it up?' and I said, 'well, one way to do it, I'll just be down there tomorrow.' " Langston then called Rodman at the bank and told him that another purchaser would be in the following day. The next day Hayes went to the bank and picked up a deed prepared by the bank. Rodman testified he indicated to Hayes that another deal was on for the sale of the land and Hayes indicated to him that he understood it. However, Rodman testified that no names were mentioned by him. Hayes denied that he had told Rod-

man he knew the farm was sold to someone else. According to Hayes, he had heard only a rumor that the farm was sold. Killian testified that after he had filed this action against the appellee, Hayes told him in a telephone conversation that he knew Killian had purchased the farm.

After acquiring the unsigned deed from the bank on February 7, 1969, Hayes went to the county courthouse and searched the records for any encumbrances against the property; flew to Texas; completed the transaction with Langston and his wife; returned the next day and had the deed recorded by the county clerk after the courthouse had closed that day. There was also evidence adduced that "some real estate men" had looked at the property and that others had tried to buy the farm.

There is never a presumption of fraud and the burden is upon the party alleging it to establish the allegation, in this type transaction, by a preponderance of the evidence. *Clay* v. *Brand,* 236 Ark. 236, 365 S. W. 2d 256 (1963).

In the case at bar the chancellor found that the transaction was not fraudulent and that the appellee did not have notice, either actual or constructive, of a binding contract for the sale of the farm. Even if we should consider the contract binding, we cannot say that the findings of the chancellor are against the preponderance of the evidence.

Affirmed.