## H. Robert REES et ux v. CRAIGHEAD INVESTMENT CO., Inc.

5-5631                                    472 S.W. 2d 92

Opinion delivered November 1, 1971

*Ward & Dupwe,* for appellants.

*Douglas Bradley,* for appellee.

FRANK HOLT, Justice. This action was instituted by Citizens Bank of Jonesboro and Craighead Investment Company, Inc. to cancel two real estate transfers relating to one piece of property on the allegation that the transactions were a fraud against them as creditors. The bank is no longer a party to this proceeding. In finding the issue in favor of the appellee, the chancellor found that a written agreement by Rees Plumbing Company, Inc. to sell a lake house to Weldon Douglas, and the subsequent assignment of that agreement by Douglas to appellant H. Robert Rees were fraudulent and designed to hinder and delay creditors and to place the property beyond the reach of present and future creditors. The transactions were cancelled and set aside and the property declared to be subject to appellee's judgment lien.

For reversal appellants assert that the trial court erred in refusing appellants' written motion to dismiss appellee's complaint before and after presentation of its evidence and, further, that the findings of the chancellor are "contrary to the facts and the law applicable thereto." We find no merit in these contentions.

Rees Plumbing Company, Inc. acquired title to the property in dispute in 1964. Harold R. Rees, the father of appellant H. Robert Rees, was the controlling stockholder of this Arkansas corporation. In March 1966 the company executed a written and unrecorded agreement with Weldon Douglas, a long-time employee of the company, by which the company agreed to sell a lake house to Douglas and also to keep up the $180.00 monthly mortgage payments on this property and to deliver to him a deed whenever the approximate $18,000.00 balance was paid by the company. In exchange for this conveyance, Douglas conveyed to Harold R. Rees his 100 shares of stock (payment was secured by a $1,000 note which was cancelled) in a New Mexico corporation. This transfer made Harold R. Rees the controlling stockholder in the foreign corporation. In March 1966 and for several months prior and subsequent thereto the

Arkansas company was heavily indebted to the bank and was unable to meet its obligations.

The next conveyance asserted to be fraudulent was executed on December 30, 1966, between Douglas and H. Robert Rees, appellant and son of R. Harold Rees, by which Douglas assigned to appellant all of his rights in the written contract of sale which he had acquired from the plumbing company in March. On this date neither Douglas nor appellant H. Robert Rees was indebted to the bank or appellee. About two weeks before this assignment, Harold R. Rees, individually, and the Arkansas company which he controlled executed new notes totalling $72,500.00 to the appellee investment company in return for appellee paying their old notes which were owed to the Citizens Bank. An additional note of $7,020.00 was executed by Harold R. Rees and the company to appellee on December 22, 1966.

In May 1969 appellee secured a judgment in the total amount of $97,640.44 against Rees Plumbing and Harold R. Rees individually. A month later appellee discovered the existence of the two conveyances and thereupon the appellee and the bank filed the present action against Harold R. Rees, appellant H. Robert Rees, son of Harold R. Rees, Weldon Douglas, and their respective wives to set aside the conveyance from Rees Plumbing to Douglas and the assignment from Douglas to appellant H. Robert Rees, and for foreclosure of their judgment lien upon the property in dispute.

Beginning in September 1965, it appears that Rees Plumbing Company was heavily indebted to Citizens Bank and continued to borrow money and in many instances to write overdrafts until it ceased business in August or September 1966. The bank permitted this in a continuing effort to improve its security. A witness, who was vice president of the bank and chairman of the loan committee, testified that he was familiar with the Rees company account. There were constant problems such as the renewals of notes, which could not be paid, and the writing of overdrafts. In September 1965 the loan balance was $50,000.00 and during the monthly

transactions thereafter the loan balance was never less than $50,000.00 and ranged up to $225,000.00, plus excessive overdrafts; for instance, in February 1966 one account balance reflected $5,112.81, another account was overdrawn by $74,697.64, and another account was overdrawn by $36,947.34. For this same month the high loan balance was $180,000.00 and the low was $170,-000.00. On March 31, 1966, there was a balance of $6,-406.64 in one account, another account was overdrawn by $4,692.39, and another one showed an overdraft of $19,133.30. The high loan balance for this month was $180,000.00 and the low was $170,000.00. In April the loan balance was reduced from $180,000.00 to $135,000.00. In June the loan balance varied from $180,000.00 to $225,000.00; in July from $135,000.00 to $225,000.00; and in August the balance owed was $115,351.89. This witness testified that the bank had continued to renew the loans and to honor the overdrafts in an effort to strengthen its security by buttressing the financial position of the plumbing company. In December 1966 the plumbing company owed the bank notes totalling something less than $80,000.00. This former official of the bank testified that in his opinion the plumbing company was insolvent in March and December, the respective dates of the two conveyances. In fact, this witness was of the view that the plumbing company was insolvent since "the summer of 1965."

Bank examiners insisted that the bank remove from its portfolio the Rees company indebtedness by January 1, 1967. Accordingly, in December 1966 the appellee investment company paid off the plumbing company's and Rees' notes to Citizens Bank and Harold R. Rees executed new notes to the investment company totalling $77,502.00. At the time these notes were executed, December 15 and 22, the written agreement between Rees Plumbing Company and Douglas had been in existence since March, or approximately 9 months. This agreement was never recorded; Douglas never paid anything on the mortgage, the taxes, or the insurance; nor did he ever see or take possession of the lake house property after this transaction. He was not aware of the amount of the mortgage or any existing equity in the

property. Douglas's testimony, which was unrebutted by Harold Rees or appellant Robert Rees, was that he surrendered his shares of stock in Rees Plumbing Company of New Mexaco on the promise of Harold R. Rees that he would receive shares in an Arkansas corporation and that the "Agreement For The Sale Of Rees Property" was given merely as security that Weldon Douglas would receive the promised shares. Douglas further stated that he gave the assignment of the property to appellant H. Robert Rees, at Rees's father's suggestion, because after the plumbing company went broke, he (Douglas) had no more interest in the property and just wanted to get rid of it. "I had already told him that I had no more interest in it—that I thought—as I said before that any collateral or security I was holding it for had dissipated and I only wanted what I thought I might have earned." Appellant H. Robert Rees testified that he did not pay Douglas anything for any equity—Rees merely agreed "to make the payments and take over the obligation."

Harold R. Rees testified by deposition that his company was not insolvent in March 1966. Loans were regularly extended upon a financial statement and collateral—a job completion estimate or an assignment. According to him, the Citizens Bank extended his company a $300,000.00 line of credit. He did not dispute that his company owed the bank $180,000.00 in March 1966. He maintained that during this month his company was in a position to pay its debts. However, that would have resulted in no operating capital and his company would have been unable to meet the payroll which ranged from $30,000.00 to $50,000.00 per week. He testified that his company was able to meet its obligations until September 1966 when the bonding company refused him assistance.

Ark. Stat. Ann. § 68-1302 (Repl. 1957) provides that a conveyance or assignment which is made with the intent to hinder, delay or defraud creditors is void.

In *United States Ozone Co. v. Morrilton Ice Co.*, 186 Ark. 485, 54 S. W. 2d 282 (1932), we said:

"* * * Fraud is never presumed, but must be affirmatively proved, and the burden of proving fraud is upon the party who alleges it and relies on it. 27 C. J. 44 et seq.

Whether or not there has been fraud in any case is usually a question of fact. Fraud is a question of law only when the facts are undisputed and but one reasonable conclusion can be reached from the evidence, or where there is an entire failure to sustain the issue."

In a suit to set aside a fraudulent conveyance the allegation of fraud must be shown by a preponderance of the evidence. *Clay* v. *Brand,* 236 Ark. 236, 365 S. W. 2d 256 (1963); *Killian* v. *Hayes,* 251 Ark. 121, 470 S. W. 2d 939 (1971).

Badges or indicia of fraudulent conveyances include insolvency or indebtedness of transferor, inadequate or fictitious consideration, retention by debtor of property, pendency or threat of litigation, secrecy or concealment, and the fact that disputed transactions were conducted in a manner differing from usual business practices. *Harris* v. *Shaw,* 224 Ark. 150, 272 S. W. 2d 53 (1954).

One of the most important factors to be considered in cases of this kind is the insolvency or indebtedness of the parties. Insolvency is a lack of means to pay one's debts, or in considering one's assets and liabilities that the assets, if made immediately available, would not be sufficient to discharge the liabilities. *Bank of Sun Prairie* v. *Hovig,* 218 Fed. Supp. 769 (W. D. Ark. 1963).

In the case at bar we cannot say that the findings of the chancellor that the conveyances were fraudulent are against the preponderance of the evidence.

Further, we cannot agree with appellants that appellee's complaint is subject to a motion to dismiss. Appellants assert that appellee cannot be subrogated as a successor creditor to the bank. In *Rudy* v. *Austin,* 56

Ark. 73, 19 S. W. 111 (1892), we held that when a voluntary conveyance was made to defraud a prior creditor, then a subsequent creditor who pays off the prior debts will be subrogated to the rights of the prior creditor. Therefore, in the case at bar, appellee would be subrogated to the rights of the bank.

Affirmed.