# OUACHITA ELECTRIC COOPERATIVE CORPORATION *v.* EVANS-ST. CLAIR

CA 83-363                                      672 S.W.2d 660

Court of Appeals of Arkansas
Division II
Opinion delivered July 5, 1984

*Roberts, Harrell, Lindsey & Foster, P. A.,* by: *Searcy W. Harrell, Jr.,* for appellant.

*Friday, Eldredge & Clark,* by: *Michael G. Smith,* for appellee.

DONALD L. CORBIN, Judge. Appellant, Ouachita Electric Cooperative Corporation, sued for the collection of past

due electric bills in the amount of $37,676.80 for electricity furnished to St. Clair Rubber Company of Arkansas. Appellant sought to charge appellee, Evans-St. Clair, Inc., the purchaser of certain assets of St. Clair Rubber Company of Arkansas, with this responsibility. Appellant alleged below and here on appeal that the transfer of assets violated the Bulk Sales Act of Arkansas, Ark. Stat. Ann. §§ 85-6-101—109 (Add. 1961), and that the transfer was a fraudulent conveyance. The chancellor found to the contrary on both issues, but awarded judgment to appellant in the amount of $37,676.80 against St. Clair Rubber Company of Arkansas. We affirm.

On August 3, 1982, St. Clair Rubber Company of Arkansas ("St. Clair"), St. Clair Rubber Company located in Michigan ("St. Clair-Michigan"), National Acceptance Company of America ("NAC") and Evans-St. Clair, Inc. ("Evans-St. Clair") entered into an agreement whereby St. Clair and St. Clair-Michigan would transfer certain machinery, equipment, tools and other property they owned to Evans-St. Clair. In return for the transfer, Evans-St. Clair paid NAC $200,000.00 in cash and signed a promissory note to NAC in the sum of $500,000.00. NAC had previously made loans to St. Clair and St. Clair-Michigan totaling $2,244,524.21 and had a blanket perfected security interest in all the assets transferred to Evans-St. Clair which was cross-collateralized so that the assets of both St. Clair companies secured the full indebtedness. NAC agreed not to sue St. Clair, St. Clair-Michigan, or Mr. S. S. Livingstone, the prior owner and seller of St. Clair, if Evans-St. Clair defaulted on the $500,000.00 promissory note, and further agreed to release any and all security interest which it had in the remaining assets of St. Clair, St. Clair-Michigan and Mr. Livingstone upon payment of $1,544,524.21, a net reduction of indebtedness by $700,000.00.

No inventory was transferred as part of the asset purchase. Evans-St. Clair did receive an option to purchase the inventory at a price equal to 50% of the St. Clair companies' book value, subject to the right of these companies to sell the inventory to anyone else at any time as part of the transaction. If Evans-St. Clair had not purchased the

inventory at the end of one year, the St. Clair companies had the right to demand that Evans-St. Clair purchase the inventory still on hand at its wholesale fair market value. At the date of trial, approximately 1/3 of the inventory had been used on an as-needed basis by Evans-St. Clair. The remaining 2/3's of the inventory was still located at the Evans-St. Clair plant in East Camden and was identifiable as the St. Clair companies' property. The value paid for the assets purchased was arrived at by Evans-St. Clair in reliance upon appraisals furnished by an appraisal company which had a good reputation and had been relied upon in the past by Evans Industries, the parent company of Evans-St. Clair. The representations of the St. Clair companies' owner, Mr. S. S. Livingstone, were also relied upon in arriving at the amount of consideration to be paid. The machinery and equipment located in Michigan were appaised at a forced liquidation value of $167,787.00; the machinery and equipment in Arkansas were appraised at a forced liquidation value of $497,731.00, with $56,925.00 to be subtracted for the toxological boot equipment which was deleted from the transfer; and the real estate in Michigan conveyed was valued at approximately $100,000.00, based upon a three-year old appraisal. Evans-St. Clair negotiated for these assets as a whole package, and not as separate purchases. The allocation of purchase prices set forth in the Bills of Sale was made at the request of NAC, for its own internal accounting purposes.

Appellant contends that the transfer was in violation of the Bulk Sales Act. Ark. Stat. Ann. § 85-6-102 (Add. 1961), defines bulk transfers as follows:

(1) A 'bulk transfer' is any transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise or other inventory (Section 9-109 [§ 85-9-109]) of an enterprise subject to this Article [chapter].

(2) A transfer of a substantial part of the equipment (Section 9-109 [§ 85-9-109]) of such an enterprise is a bulk transfer if it is made in connection with a bulk transfer of inventory, but not otherwise.

(3) The enterprises subject to this Article [chapter] are all those whose principal business is the sale of merchandise from stock, including those who manufacture what they sell.

(4) Except as limited by the following section all bulk transfers of goods located within this state are subject to this Article [chapter].

Appellant Ouachita Electric Cooperative Corporation argues that a bulk transfer between appellees took place since a major part of the materials, supplies, merchandise and other inventory was sold as well as a substantial part of the equipment as evidenced by the Bill of Sale. Appellant also contends that the fact that title to the inventory did not pass immediately should not be decisive in a determination of a bulk transfer. Finally, appellant argues that although a transfer to a lien creditor in lieu of foreclosure would be within the provisions set out above, the facts in the instant case do not establish a transfer to NAC. We do not agree.

The provisions of the Bulk Sales Act are primarily for the protection of creditors of the seller and compliance with the Act is not compulsory, insofar as the seller is concerned, unless compliance is required by the buyer. *Herrick v. Robinson*, 267 Ark. 567, 595 S.W.2d 637 (1980). We believe the evidence clearly supports the chancellor's finding that the transaction between appellees was not in violation of the Act. The trial court in the case at bar based its finding on the following evidence: (1) no inventory was transferred by the August 3, 1982, agreement; (2) on the day of trial, approximately 2/3's of all the inventory on hand as of August 3, 1982, agreement to transfer had not been purchased by appellee; (3) the 1/3 of the inventory which had been used was purchased by appellee on a daily basis, when needed in its industrial process, but not in bulk; and (4) the transfer was in settlement of a valid security interest, and did not harm the position of any unsecured creditors.

Ark. Stat. Ann. § 85-6-103(3) (Supp. 1983), provides in part: "The following transfers are not subject to this Article [chapter]: transfers in settlement of realization of a lien or

other security interest." NAC had a perfected security interest in all the assets purchased from St. Clair and St. Clair-Michigan, and the assets of both of the companies stood as collateral for an indebtedness which was undisputedly far in excess of their value. Evans-St. Clair paid $700,000.00 to NAC, and the St. Clair companies transferred the assets to Evans-St. Clair. NAC reduced these companies' obligation to it by $700,000.00, and agreed not to sue or look to the St. Clair companies for payment in the event that Evans-St. Clair defaulted on the $500,000.00, note. The transfer was clearly in satisfaction of NAC's security interest. Appellant in its brief cites *Starman* v. *John Wolfe, Inc.,* 490 S.W.2d 377 (Mo. App. 1973), for the proposition that in order to come within the § 85-6-103(3) exception, the transfer should be made to the holder of the security interest and not to a transferee for the benefit of the security interest holder. We agree with appellee that *Starman, supra,* cannot be properly interpreted for such a broad proposition, since in that case the consideration paid for the transfer was not used entirely to pay the superior lien held by the secured creditor, but rather was used to pay in part other parties for the benefit of the transferor, resulting in a preference to some creditors. Furthermore, in *Starman, supra,* there was no evidence in the record to support the proposition that the alleged secured creditor even had a security interest in the property transferred.

In *American Metal Finishers, Inc.* v. *Palleschi,* 20 U.C.C. Rept. Ser. 1283 (1977), the plaintiff complained that the transfer would not qualify under U.C.C. § 6-103(3) because the property transfer was made to a third person who assumed the indebtedness of the transferor with a secured creditor who held a security interest in the property transferred. The New York court disagreed, stating as follows:

> The chief rationale of the Bulk Transfers article is the avoidance of the 'major bulk sales risk' of '[t]he merchant, owing debts, who sells out his stock in trade. . ., pockets the proceeds, and disappears leaving his creditors unpaid' (citations omitted). But where the transfer is in settlement of a lien or security interest,

there are no cash proceeds with which the seller could abscond. Thus, where the consideration is settlement of an indebtedness with no receipt of cash proceeds, the protective purposes of the Bulk Transfers article do not apply.

We see no reason to read subdivision (3) of § 6-103 of the Uniform Commercial Code so restrictively as to add a requirement that the transferee must be the holder of the security interest, thus ruling out transfer to one who in good faith takes over the position of the security holder. The interposition of such new party is not that of an officious volunteer; it serves a socially beneficial purpose of avoidance of foreclosure with its concomitant hardships to creditors, employees and the commercial community.

Similarly, we cannot say appellant in the instant case was prejudiced by the transaction. If St. Clair had closed its doors, NAC could have replevied the collateral and sold it in satisfaction of its security interest. If appellant had levied upon the collateral, any proceeds from a sale would have been subject to the prior security interest of NAC, which secured an indebtedness of $2,244,524.21. St. Clair could have transferred the property directly to NAC without any conceivable violation of the Bulk Sales Act.

The Bulk Sales Act of Arkansas does not purport to regulate agreements to sell inventory in the future. Here we have an option to purchase agreement for the sale of inventory in the future which is not a transfer of inventory and, therefore, is not subject to the Bulk Sales Act, since Ark. Stat. Ann. § 85-6-102(1) (Add. 1961), by its terms applies only to "transfers in bulk." The Bulk Sales Act does not purport to regulate agreements for the sale of inventory as opposed to actual transfers of inventory because until the inventory is actually sold, title to it remains in the seller and is at all times subject to being levied upon by the seller's creditor. An agreement to sell the inventory gives the purchaser no property interest in the inventory, but is merely an executory contractual right. Accordingly, we find no merit to this contention.

Appellant also contends that the trial court erred in finding that the transfer was not a fraudulent conveyance pursuant to Ark. Stat. Ann. § 68-1302 (Repl. 1979). This statute provides as follows:

> Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods and chattels, or things in action, or of any rents issuing therefrom, and every charge upon lands, goods or things in action, or upon the rents and profits thereof, and every bond, suit, judgment, decree or execution, made or contrived with the intent to hinder, delay or defraud creditors or other persons of their lawful actions, damages, forfeitures, debts or demands, as against creditors and purchasers prior and subsequent, shall be void.

Fraud is never presumed, but must be affirmatively proved, and the burden of proving fraud is upon the party who alleges it and relies on it. *Rees* v. *Craighead Inv. Co., Inc.,* 251 Ark. 336, 472 S.W.2d 92 (1971). In a suit to set aside a fraudulent conveyance, the allegation of fraud must be shown by a preponderance of the evidence. *Killian* v. *Hayes,* 251 Ark. 121, 470 S.W.2d 939 (1971). It has also been held that while fraud may be established by circumstantial evidence, the circumstances must be so strong and well connected as to clearly show fraud. *Stringer* v. *Georgia State Savings Assoc. of Savannah,* 218 Ark. 683, 238 S.W.2d 629 (1951). Badges or indica of fraudulent conveyances include insolvency or indebtedness of the transferor, inadequate or fictitious consideration, retention by the debtor of property, the pendency or threat of litigation, secrecy or concealment, and the fact that disputed transactions were conducted in a manner differing from usual business practices. *Harris* v. *Shaw,* 224 Ark. 150, 272 S.W.2d 53 (1954).

In the case at bar we cannot say that the finding of the chancellor that the transfer was not fraudulent is against the preponderance of the evidence. The assets transferred were the subject of a perfected security interest in favor of NAC which secured an indebtedness of $2,244,524.21 of St. Clair and St. Clair-Michigan. The assets purchased were nego-

tiated as an entire package and not as separate parcels. While the Bill of Sale for the Arkansas assets showed approximately $440,000.00 of assets being transferred at a stated purchase price of $225,000.00, the Michigan Bill of Sale showed assets having a liquidation value of only $167,787.00 and real property having a value of only $100,000.00 which was purchased from St. Clair-Michigan at a price of $475,000.00. All of the assets of both St. Clair companies were pledged to secure the $2,244,524.21 indebtedness to NAC. The allocation of the monies as reflected on the Bills of Sale was at the suggestion of and for the internal accounting purposes of NAC. Furthermore, appellant offered no evidence at trial which would contradict the appraised values of the property transferred.

The $700,000.00 was paid to the lienholder, NAC, in the form of $200,000.00 cash and a $500,000.00 promissory note. It was not paid to St. Clair. Consideration flowed to St. Clair in that NAC agreed not to look to St. Clair for payment in the event that Evans-St. Clair defaulted under the terms of the $500,000.00 promissory note, and further agreed to release the assets of St. Clair upon payment of $1,544,524.21, which constituted a reduction in St. Clair's liability to NAC by $700,000.00. A conveyance by a debtor to a third party of mortgaged property is supported by adequate consideration if the third party grantee agrees to pay the debts owed by the grantor and which are secured by the property. *First State Bank of Corning* v. *Gilchrist,* 190 Ark. 356, 79 S.W.2d 281 (1935).

In *Sieb's Hatcheries* v. *Lindley,* 111 F.Supp. 705 (W.D. Ark. 1953), the district court quoted from a prior Arkansas decision as follows:

> The creditor who seeks to set aside a conveyance as fraudulent must show that his debtor has disposed of property that might otherwise have been subjected to the satisfaction of his debt.

Here, the record is barren of any evidence which would demonstrate that the lien of NAC was not perfected, or that

the value of the assets transferred exceeded the amount secured by the assets.

The transfer would not have been fraudulent unless an inadequate consideration was established. The preference of one creditor over another does not in itself make the transfer to the preferred creditor void or voidable as a fraudulent conveyance. *Nicklaus* v. *Peoples Bank & Trust Co., Russellville, Ark.,* 258 F.Supp. 482 (E.D. Ark. 1965), *aff'd,* 369 F.2d 683 (8th Cir. 1966). The consideration in this case was clearly adequate. Appellant presented no evidence which would indicate that a greater price could have been obtained. In determining fraudulent intent on the part of the parties to a transaction, mere inadequacy of price for consideration is insufficient; it is only when the inadequacy of price is so gross that it shocks the conscience, and furnishes satisfactory and decisive evidence of fraud, that it will be sufficient proof that the purchase is not *bona fide. Fluke* v. *Sharum,* 118 Ark. 229, 176 S.W. 684 (1915). We find no merit to this point. In conclusion, we cannot say that the chancellor's findings were clearly erroneous (clearly against the preponderance of the evidence), A.R.C.P. Rule 52(a), and we affirm.

Affirmed.

CRACRAFT and GLAZE, JJ., agree.