Jack M. CLARK, Norma G. Clark, and Gary Michael Clark, Trustee of the Jack M. Clark Trust *v.* BANK OF BENTONVILLE

91-232                                                        824 S.W.2d 358

Supreme Court of Arkansas
Opinion delivered February 3, 1992

*John M. Blair*, for appellants.

*Richard W. Hood*, for appellee.

DONALD L. CORBIN, Justice. This case arises out of appellants Jack and Norma Clark's conveyance of real property in Benton County, Arkansas, to appellant Gary Clark, trustee of the Jack M. Clark trust. The warranty deed conveying the property was executed on April 14, 1986, and was filed for record on May 9, 1986. On January 7, 1987, appellee Bank of Bentonville, a creditor of Jack and Norma Clark, filed this action, along with *lis pendens* notice, to set aside the transfer as a fraudulent conveyance.

On August 10, 1987, appellants Jack and Norma Clark filed a Chapter 7 bankruptcy petition in United States Bankruptcy Court for the Central District of California, San Bernardino Division. The bankruptcy court entered an order on December 30, 1987, granting Jack and Norma Clark a discharge in bankruptcy. At the close of the bankruptcy case, the bank proceeded with its previously filed fraudulent conveyance action. The chancellor denied appellants' motion to dismiss this action, and determined that the conveyance of April 14, 1986, was fraudulent. The chancellor ordered a sale of the property with the proceeds applied to appellants' debt to the bank. On June 19, 1991, the property was sold and the proceeds paid to the appellee

bank.

On appeal, appellants raise two arguments in urging us to reverse the chancellor. First, they argue that the chancellor erred in denying their motion to dismiss because either appellants' discharge in bankruptcy or the doctrine of *res judicata* should have precluded the bank from proceeding with this action. Second, appellants argue that the chancellor erred in denying their motion for a directed verdict because the bank did not prove fraudulent intent by a preponderance of the evidence. We find no error on the part of the chancellor, and affirm his decision.

Appellants' initial argument is that the chancellor erred in allowing the bank to proceed with its fraudulent conveyance action after appellants obtained a discharge from the bankruptcy court. Appellants rely on both the discharge provisions of the bankruptcy code and the doctrine of *res judicata*. The bank does not dispute the validity of appellants' bankruptcy discharge, but argues that the bank's pre-petition filing of this action created a lien on the property at issue which survived the discharge of appellants' debt to the bank.

■■ Under Arkansas law, a general creditor who files an action to cancel a fraudulent conveyance of a debtor acquires a specific lien on the property conveyed. *Boyd* v. *Arnold*, 103 Ark. 105, 146 S.W. 118 (1912); *Stix* v. *Chaytor*, 55 Ark. 116, 17 S.W. 707 (1891). While the afore-cited cases involved liens on personal property, we extend the rule to include liens on real property when notice of *lis pendens* is filed. In this case, the bank created a specific lien on the property at issue when it filed its fraudulent conveyance action on January 7, 1987. 11 U.S.C. § 522(c)(2) (1979 & Supp. 1991), provides that liens which are not avoided in the bankruptcy proceeding will be preserved notwithstanding the discharge of the debtor. *Long* v. *Bullard*, 117 U.S. 617 (1886); *In re Dickinson*, 24 B.R. 547 (Bankr. S.D. Cal. 1982). Since a discharge in bankruptcy does not defeat a valid lien, the chancellor did not err in denying appellants' motion to dismiss merely because appellants' underlying debt to the bank was discharged in the bankruptcy proceeding.

■ Appellants also rely on the doctrine of *res judicata* in arguing that the bank should have either objected to appellants' discharge, established its status as a secured creditor, or pursued

its fraudulent conveyance action during the bankruptcy proceeding. 11 U.S.C. § 727(a)(2) (1979) provides for objections to discharge based on a debtor's fraudulent transfer of property. However, this section specifically requires that the alleged fraudulent conveyance occur within one year of the debtor's bankruptcy filing. 11 U.S.C. § 727(a)(2)(A). *See also Collier on Bankruptcy*, ¶ 727.02(2) (15th ed. 1988). In this case, the alleged fraudulent conveyance occurred on April 14, 1986, a date approximately fourteen months prior to appellants' bankruptcy petition filing. Therefore, under section 727(a)(2), the bank could not have asserted a valid objection to discharge during the bankruptcy proceeding.

Appellants do not cite any authority to support their arguments that the bank had the duty to establish its secured status or pursue its fraudulent conveyance action during the bankruptcy proceeding. While the record in the case does not contain the bankruptcy proceedings, neither party disputes the fact that the bank was listed as an unsecured creditor in the bankruptcy schedule. The bankruptcy court in *In re Dickinson, supra*, addressed a similar situation. In the *Dickinson* case, a group of doctors filed a state court action to enforce a lien created prior to the debtor patient's bankruptcy filing. The doctors were listed as unsecured creditors on the schedule, and the debt was discharged in the bankruptcy proceeding. When the doctors brought a state court action to enforce their pre-petition lien, the debtor filed an action in the bankruptcy court requiring the doctors to show cause why they should not be cited for contempt for violating the permanent injunction against any attempt to collect on a preexisting debt. Ultimately, the court held that the Dickinson creditors were not in contempt because the debtor's discharge did not affect their valid pre-petition lien. The bankruptcy court also refused to consider the propriety of avoiding the lien since the *debtor* failed to contest the claim during the bankruptcy proceeding. The court noted that the debtor's attorney was aware of the existence of the liens and could have taken action to avoid the liens during the bankruptcy proceedings.

In this case, appellants do not allege that they had no notice of the bank's pre-petition filing of the fraudulent conveyance action. They merely assert that the bank should have taken affirmative action to preserve its lien in the bankruptcy proceed-

ing. Appellants cite no authority to support their argument, and we believe the reasoning in the *Dickinson* case, *supra*, indicates that appellants, rather than the bank, had the burden of contesting the lien. In fact, 11 U.S.C. § 506(d) (Supp. 1991) specifically provides:

> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, *unless* —
>
> . . . .
>
> (2) *such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim* under Section 501 of this title. [Emphasis supplied.]

*See also In re Weathers*, 15 B.R. 945 (Bankr. D. Kan. 1981).

■ Appellants further argue that *res judicata* should bar the bank's fraudulent conveyance action because the claim was not pursued in the bankruptcy proceeding. However, the bankruptcy code does not give a creditor the power to pursue a cause of action to set aside a fraudulent conveyance. *Nebraska State Bank* v. *Jones*, 846 F.2d 477 (8th Cir. 1988). In fact, 11 U.S.C. § 362(a) (1979) imposes an automatic stay that prohibits creditors from acting against a debtor's property during the pendency of the bankruptcy proceeding. *See also In re Weathers, supra.* While a trustee may elect to pursue a creditor's unsecured state law claim under 11 U.S.C. § 544(b) (1979), *Nebraska State Bank, supra*, such an action is an exercise of the avoidance power for the benefit of all creditors. Since the bank did not have standing as a single creditor to pursue the fraudulent conveyance action during the bankruptcy proceeding, *id., res judicata* did not prohibit the bank's subsequent state court action.

For their second allegation of error, the appellants contend that the evidence does not support a finding of fraudulent intent, and that the chancellor erred in finding the transaction to be a fraudulent conveyance. The applicable statutes at the time of the allegedly fraudulent conveyance were set out in Ark. Stat. Ann. §§ 68-1301 and 68-1302 (Repl. 1979). Those statutes provided in pertinent part:

**68-1301. Gifts and conveyances in trust to use of**

**person making.** — Every deed of gift and conveyance of goods and chattels in trust to the use of the person so making such deed of gift or conveyance, is declared to be void as against creditors existing, and subsequent purchasers.

**68-1302. Conveyances or legal actions to defraud creditors void.** — Every conveyance or assignment, . . . of any estate or interest in lands, . . . or of any rents issuing therefrom, and every charge upon lands, goods or things in action, or upon the rents and profits thereof, . . . made or contrived with the intent to hinder, delay or defraud creditors or other persons of their lawful actions, damages, forfeitures, debts or demands, as against creditors and purchasers prior and subsequent, shall be void.

Fraudulent intent is necessary to bring a conveyance within the purview of section 68-1302, *Ralston Purina Co. v. Davis*, 256 Ark. 972, 511 S.W.2d 482 (1974); *Tipp v. United Bank of Durango*, 23 Ark. App. 176, 745 S.W.2d 141 (1988), and the party who alleges and relies upon fraud bears the burden of proving fraud by a preponderance of the evidence. *Killian v. Hayes*, 251 Ark. 121, 470 S.W.2d 939 (1971); *Ouachita Elec. Coop. Corp. v. Evans-St. Clair*, 12 Ark. App. 171, 672 S.W.2d 660 (1984). Circumstances that are recognized as indicia of fraudulent intent to include insolvency or indebtedness of the transferor, inadequate or fictitious consideration, retention of property by the debtor, the pendency or threat of litigation, secrecy or concealment, and the employment of unusual business practices in the disputed transaction. *Harris v. Shaw*, 224 Ark. 150, 272 S.W.2d 53 (1954).

At the time appellants conveyed the property that is the subject matter of this suit, appellants owed the bank on three promissory notes totaling approximately $193,050. This debt was secured by two tracts of real estate, neither of which is at issue in this case.

Kenny Hancock, an officer at the bank, testified that the Clark loans were referred to his attention in November 1985, because Mr. Clark's interest payments were past due. Mr. Hancock testified that he met with Mr. Clark in November of 1985 to discuss alternatives the bank would consider in resolving

Mr. Clark's delinquent payments. These alternatives included a voluntary conveyance of the mortgaged tracts of real estate which the bank would sell with the possibility of a deficiency. Another alternative involved the bank loaning interest if Mr. Clark would provide additional collateral.

Beginning in January of 1986, the bank sent letters to appellant Jack Clark and to appellants' attorney repeating some of the alternatives the bank would consider in lieu of foreclosure, and informing Mr. Clark that the matter would soon be referred to legal counsel. On March 11, 1986, appellants offered to convey the mortgaged property to the bank and consent to a deficiency equal to the accrued interest on the loans. At that time, the accrued interest totaled approximately $24,500. On March, 14, 1986, the bank sent a letter rejecting appellants' proposal, and suggesting a larger deficiency or extension of time with additional collateral to be provided by appellants.

On April 14, 1986, appellants executed a trust agreement, and conveyed the property that is the subject matter of this suit to their son Gary Clark, trustee of the Jack M. Clark trust. This property was unencumbered. On May 16, 1986, the bank filed a foreclosure action which subsequently resulted in sales of the two tracts of property securing appellants' bank loans. The bank also obtained deficiency judgments totaling $193,650.

At the conclusion of this action, the chancellor determined that appellants' conveyance on April 14, 1986, was a fraudulent conveyance. He based his determination on the following findings of fact: 1) On the date of the conveyance, the Clarks were without sufficient liquid assets to make payments on the accrued and unpaid interest owed to the bank; 2) the consideration of "one dollar plus other good and valuable consideration" paid to Gary Clark, trustee of the Jack M. Clark trust, was nominal; 3) the trust agreement under which Gary Clark received title to the property allowed appellants to retain certain incidents of ownership over the property conveyed to the trust; and 4) the conveyance at issue was made after the bank made demands on the Clarks and advised them that their obligations were under-collateralized.

Appellants argue that the chancellor erred in finding fraudulent intent because they were not insolvent at the time of

the April 14, 1986 conveyance. The trial court did not make a finding of insolvency, but found that appellants were without sufficient liquid assets to pay their debt at the time of the conveyance. In *Lessman* v. *Dawson*, 14 Ark. App. 285, 687 S.W.2d 860 (1985), the Arkansas Court of Appeals relied on *United States* v. *Johnston*, 245 F. Supp. 433 (W.D. Ark. 1965) in holding that the question of a debtor's solvency for purposes of determining fraudulent intent, is not the ultimate question but is simply a matter for consideration in determining whether a conveyance was made with intent to delay, hinder, or defraud creditors. In *United States* v. *Johnston*, the court stated:

> In a suit to set aside a conveyance as fraudulent, it is not indispensable for the plaintiff to prove that the transferor was insolvent at the time of the transfer or that he was made so by the transfer. If prejudice to creditors results, a transfer made with intent to hinder, delay or defraud them will be set aside even though the transferor was solvent at the time of the transfer and remained so thereafter . . . .

*Id.* at 440-41.

▮ This court has held that conveyances by an embarrassed debtor to his near relatives are presumably fraudulent, and when the debtor's condition proceeds, as here, to the point of insolvency, such conveyances are conclusively presumed fraudulent. *Wilks* v. *Vaughan*, 73 Ark. 174, 83 S.W. 913 (1904). In this case, the evidence shows that appellants conveyed the property at issue fourteen months before filing bankruptcy. At the time of the conveyance, appellants had become delinquent in their payments to the bank, and the bank had repeatedly threatened legal action. Appellants conveyed the property to their son Gary Clark, trustee of the Jack M. Clark trust for nominal consideration, and the trust agreement explicitly stated that the trustee was to pay Jack Clark from the proceeds of the trust whatever sums of money Jack Clark deemed "convenient."

▮ Although chancery cases are tried *de novo* on appeal, we will not reverse the chancellor's findings of fact unless they are clearly erroneous. *Hackworth* v. *First Nat'l Bank*, 265 Ark. 668, 580 S.W.2d 465 (1979). From our *de novo* review, we cannot say that the findings of the trial court are clearly erroneous

given the indicia of fraud implicated in the conveyance at issue. Accordingly, we affirm.