**In re Lance S. BROWN, Debtor.**

**Dobieco, Inc., Plaintiff,**

v.

**Lance S. Brown; A. Jan Thomas, Jr., Trustee, Defendants.**

**Bankruptcy No. 00–30017M.
Adversary No. 00–3030.**

United States Bankruptcy Court,
E.D. Arkansas,
Jonesboro Division.

July 20, 2001.

Warren Dupwe, Jonesboro, AR, for debtor.

Kim Tucker, Little Rock, AR, for Saxton Pierce Restaurant Corp.

Ralph Waddell, Jonesboro, AR, for Dobieco, Inc.

### MEMORANDUM OPINION

JAMES G. MIXON, Chief Judge.

On January 7, 2000, Lance S. Brown ("Debtor") filed a voluntary petition for relief under the provisions of chapter 7. On January 10, 2000, A. Jan Thomas, Jr. was appointed Trustee.

On March 7, 2000, the Trustee filed a motion pursuant to 11 U.S.C. § 365 to

assume and assign an unexpired lease of nonresidential real property between the Debtor as Lessee and Mazzio's, Inc., as Lessor. The Trustee seeks to assign the lease to Saxton Pierce Restaurant Corporation ("Saxton Pierce") for the sum of $25,000.00.

Dobieco, Inc. ("Dobieco") filed this adversary proceeding on June 5, 2000, seeking an injunction prohibiting the Trustee from assuming and assigning the lease on the grounds that the Debtor assigned the lease pre-petition to Dobieco and, therefore, the lease is not property of the Debtor's estate.

The Trustee filed an answer and a counterclaim against Dobieco. In his counterclaim, the Trustee alleged that the pre-petition assignment of the lease from the Debtor to Dobieco was a fraudulent conveyance under state law and subject to avoidance pursuant to 11 U.S.C. § 544(b)(1) of the United States Code. The Trustee asks for a Judgment avoiding the transfer of the lease and for an award against Dobieco equal to the value of the leasehold interest at the time of the transfer.

A trial on the merits was held in Jonesboro, Arkansas, on November 20, 2000, and the matter was taken under advisement. The Court has jurisdiction under 28 U.S.C. § 1334 and § 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H) & (O), and the Court has jurisdiction to enter a final judgment in this case. The following shall constitute the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

## FACTS

Saxton Pierce (originally G.S.B., Inc.) is a corporation which operates franchise restaurants, particularly Mazzio's Pizza restaurants. Typically, Saxton Pierce ac- quires, either by lease or purchase, real property for a restaurant location and a Mazzio's Pizza franchise from Mazzio's Corporation.

On January 1, 1996, Saxton Pierce and Mazzio's Corporation entered into a lease of real property located in Paragould, Arkansas, for the purpose of operating a Mazzio's Pizza restaurant. The lease term was from January 1, 1996, through January 30, 2002. The lease payments are due monthly in the sum of $1887.00. The lease prohibits the assignment of the lease by the lessee except with the written consent of the lessor, which may not be unreasonably withheld. Saxton Pierce also obtained a Mazzio's franchise and began operation of the pizza restaurant.

In the latter part of 1996, Saxton Pierce decided it would be interested in selling the restaurant in Paragould. Mazzio's Corporation referred the Debtor to Saxton Pierce as a possible purchaser. After some investigation and negotiation, the Debtor and Saxton Pierce executed a letter of intent dated January 27, 1997, for the sale of the business to the Debtor. The essential terms of the sale were as follows:

1. The Debtor would pay Saxton Pierce $15,000.00 cash at closing.

2. The Debtor would lease all furniture, fixtures, and equipment of the business from Saxton Pierce for payments to Saxton Pierce in the sum of $6110.72 per month for 60 months for a total of $366,643.20.

3. The Debtor would assume Saxton Pierce's lease obligations to Mazzio's Corporation, including payment of $1887.00 per month in rent, in connection with the real property in Paragould, Arkansas, where the restaurant was located.

4. The Debtor would purchase beginning cash and inventory at cost.

5. The Debtor would execute a new franchise agreement with Mazzio's Corporation.

Although the monthly payments of $6110.72 to Saxton Pierce were structured as if they were equipment lease payments, Saxton Pierce acknowledged that this sum actually represented the consideration for the goodwill of its ongoing business and had very little relationship to the value of the leased equipment.

Thereafter, the transaction was closed on February 28, 1997, and as part of the closing, Saxton Pierce assigned absolutely all of its interest in the real estate to the Debtor. The Debtor, however, acting at the insistence of his father who lent him the money necessary to complete the transaction, structured his end of the transaction in a different way. A corporation, Dobieco, Inc., was formed February 10, 1997. Shareholders were the Debtor and his wife, each holding 50% of the stock.[1] The Debtor applied for and obtained the franchise agreement in the name of Dobieco, effective March 1, 1997.

On or about March 1; the Debtor assigned to Dobieco the real estate lease originally between Mazzio's as lessor and G.S.B.–Saxton Pierce as lessee and subsequently assigned to the Debtor by Saxton–Pierce at the sale closing. The consideration paid by Dobieco to the Debtor for the assignment of the lease was the assumption of the Debtor's obligation to make the lease payments to Mazzio's. The Debtor did not obtain written permission of Mazzio's Corporation to make the assignment as required by the lease. Maz-

zio's has sent invoices for the rent to Dobieco, and Dobieco has remitted all rent payments called for under the lease. Mazzio's Corporation has never objected to the assignment of the lease, but may not have learned of the assignment until after the bankruptcy petition was filed.

Thereafter, Dobieco operated the pizza restaurant at the Paragould location. The Debtor managed the business on behalf of the corporation and received a salary in compensation. All payments made to Saxton Pierce and Mazzio's were made by check drawn on the account of Dobieco. The Debtor did not formally assign the equipment lease to Dobieco, although the lease payments were made by Dobieco. However, the tax returns of both Dobieco and the Debtor treated the lease as if it had been assigned to the corporation.

The Debtor defaulted on his obligation under the equipment lease. The default culminated in the repossession and sale of the leased equipment and in a consent judgment for the deficiency on September 29, 1999, against the Debtor in favor of Saxton Pierce in the sum of $256,650.36 plus interest. The Debtor filed his petition for relief under the provisions of chapter 7 approximately three months later.

The Trustee argues that the assignment by the Debtor to Dobieco of the lease of real property between Mazzio's as lessor and the Debtor as assigned lessee is a fraudulent transfer, both actual and constructive. The Trustee seeks to set aside the conveyance pursuant to the provisions of section 544 of the bankruptcy code and the Arkansas Fraudulent Transfer Act. Specifically, the Trustee alleges that the

---

**1.** At his father's instruction, the Debtor on February 10, 1997, conveyed 225 shares out of his 250 shares to his wife. The balance of Debtor's stock was pledged as collateral for a loan from his father for $55,000.00, a portion of which was applied to the down payment required to purchase the business. The conveyance of Debtor's stock to his wife was without consideration.

assignment was made with the actual intent to defraud creditors and also that the transfer was made for less than a reasonably equivalent value which left the Debtor insolvent as a result of the transfer.

Dobieco argues that the assignment was not made with the intent to defraud creditors, that the transfer was for a reasonably equivalent value, and that the assignment did not render the Debtor insolvent. Dobieco further contends that the Trustee does not have standing to pursue a cause of action under section 544 because he stands in the shoes of Saxton Pierce, which by its conduct has waived or is estopped from asserting fraudulent transfer.[2]

## DISCUSSION

The Trustee is proceeding under section 544(b)(1), which provides as follows:

(b)(1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under Section 502 of this title . . .

11 U.S.C. § 544(b)(1) (1994).

The applicable law in question is contained in the Arkansas Fraudulent Transfer Act, which provides in part as follows:

(a) A transfer made . . . by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made . . . if the debtor made the transfer . . .

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) Without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor:

(i) Was engaged or was about to be engaged in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii) Intended to incur, or believed or reasonably should have believed that he or she would incur debts beyond his or her ability to pay as they became due.

Ark.Code Ann. § 4–59–204(a)(1)–(2)(i) & (ii) (Michie 1996).

The Arkansas Fraudulent Transfer Act allows for the recovery of property transferred with the intent to defraud (actual fraud) or property transferred without the actual intent to defraud but for less than the reasonably equivalent value given in exchange for the transfer (constructive fraud). This statute is the Arkansas version of the Uniform Fraudulent Transfer Act, which is patterned after 11 U.S.C. § 548 of the United States Bankruptcy Code. Michael L. Johnson, "Recent Applications of the Arkansas Fraudulent Transfer Act," 51 Ark.L.Rev. 485, 490 (1998).

 Fraud must be affirmatively proven, and the burden of proof is on the party who alleges it. *Ouachita Electric Coop. Corp. v. Evans–St. Clair*, 12 Ark. App. 171, 178, 672 S.W.2d 660, 664 (1984) (citing *Rees v. Craighead Inv. Co.*, 251 Ark. 336, 472 S.W.2d 92 (1971)). The plaintiff must prove fraud by a preponderance of the evidence. *Clark v. Bank of Bentonville*, 308 Ark. 241, 247, 824 S.W.2d 358, 361 (1992) (citing *Killian v. Hayes Bros. Lbr. Co.*, 251 Ark. 121, 470 S.W.2d 939 (1971); *Ouachita Elec. Coop. Corp. v. Evans–St. Clair*, 12 Ark.App. 171, 672 S.W.2d 660 (1984)).

2. Because of the Court's findings with regard to the fraudulent conveyance action, it is unnecessary to decide this issue.

## ACTUAL FRAUD

■ The Trustee states that direct evidence of the Debtor's intent to hinder, delay, or defraud creditors is that he implemented his father's plan with regard to assigning the lease to Dobieco. Paul Brown, the Debtor's father, may have been motivated in part by such intent, but his state of mind is irrelevant here, since the focus is on the Debtor's intent. Both the transferor and transferee must act with fraudulent intent before the transfer will be regarded as fraudulent. *Bearden v. Baugh (In re Baugh)*, 60 B.R. 102, 105 (citing *Bank of Sun Prairie v. Hovig*, 218 F.Supp. 769 (W.D.Ark.1963); *Wright v. Aaron*, 214 Ark. 254, 215 S.W.2d 725 (1948)). Here, the Debtor's only admission with regard to intent seemed to be that he assigned the lease as a prerequisite to acquiring the loan from his father to fund the down payment for the purchase of the business.

■ Although intent to hinder, delay or defraud must be actual rather than constructive, it may be proved by circumstantial evidence. *Emmett Valley Assocs. v. Woodfield (In re Woodfield)*, 978 F.2d 516, 518 (9th Cir.1992) (fraudulent intent can be inferred from circumstances surrounding the transaction) (citing *In re Adeeb*, 787 F.2d 1339, 1342–43 (9th Cir.1986)); *Kelly v. Armstrong*, 141 F.3d 799, 802 (8th Cir. 1998).

Focusing on circumstances typically present in a fraudulent conveyance, courts have developed a "badge of fraud" analysis to determine whether a transfer is actually fraudulent. *Bearden v. Baugh (In re Baugh)*, 60 B.R. 102, 104 (Bankr.E.D.Ark. 1986) (citing *Harris v. Shaw*, 224 Ark. 150, 154, 272 S.W.2d 53, 55–56 (1954); *Ouachita Elec. Coop.*, 12 Ark.App. at 178, 672 S.W.2d at 664).

The most prevalent badges of fraud are now codified in the Arkansas Code as factors to be considered. The statute provides:

(b) In determining actual intent under subdivision (a)(1) of this section, consideration may be given, among other factors, as to whether:

(1) The transfer or obligation was to an insider;

(2) The debtor retained possession or control of the property transferred after the transfer;

(3) The transfer or obligation was disclosed or concealed;

(4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) The transfer was of substantially all the debtor's assets;

(6) The debtor absconded;

(7) The debtor removed or concealed assets;

(8) The value of the consideration received by the debtor was reasonably equivalent to the-value of the asset transferred or the amount of the obligation incurred;

(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Ark.Code Ann. § 4–59–204(b) (Michie 1996).

■ The presence of a few badges of fraud may cause mere suspicion of an intent to defraud but the "confluence of several [badges of fraud] can constitute conclusive evidence of an actual intent to defraud absent 'significantly clear' evi-

dence of a legitimate supervening purpose." *Max Sugarman Funeral Home, Inc. v. ADB Investors,* 926 F.2d 1248, 1254–55 (1st Cir.1991) (citing *In re Cushman Bakery,* 526 F.2d 23, 33 (1st Cir. 1975)). *See, also, Pavy v. Chastant (In re Chastant),* 873 F.2d 89, 91 (5th Cir. 1989) (finding transfer to relative in conjunction with all other circumstances fraudulent) (citing *In re Loeber,* 12 B.R. 669 (Bankr.D.N.J.1981)).

## BADGES OF FRAUD

■ The Trustee argues that most of the badges of fraud are present in the circumstances surrounding this case. The Court will address each of the Trustee's points below.

The Trustee asserts that the transfer was to an insider and that the Debtor retained possession or control of the property transferred. In fact, the lease was transferred by the Debtor to Dobieco, which assumed the Debtor's obligation to pay the lease payments and occupied the leased premises in the operation of the pizza restaurant under the franchise agreement. Although the transfer of the lease was to an insider, the Debtor had a variety of legitimate reasons for the transfer, which was for adequate consideration as will be discussed more fully below.

Furthermore, the fact that the corporation employed the Debtor to operate the restaurant of Dobieco is not necessarily indicative of fraud since a corporation must, of necessity, conduct its business activities through the action of individuals.

Although the Debtor never received permission from Mazzio's to assign the lease, there is no evidence of intentional concealment of the transfer. Both Saxton–Pierce and Mazzio's knew of the existence of Dobieco from the beginning. The letter of intent drafted by Saxton Pierce contemplated the formation of a corporation by the Debtor. The payments on the equipment lease were made to Saxton Pierce by checks clearly identifying the maker as Dobieco, Inc., and signed by the Debtor. The payments to Mazzio's Corporation for the real estate lease and the franchise were also made by Dobieco, Inc. and signed by the Debtor. The franchise itself was issued from the beginning in the name of Dobieco, Inc., and the parties were aware that the franchise could only be operated at the leased premises. Therefore, it would not be unreasonable for Dobieco, as franchisee, to become the lessee as well.

Furthermore, Saxton Pierce did not require the Debtor to seek its consent before the Debtor assigned the lease; therefore, the Debtor was under no obligation to disclose the transfer to Saxton Pierce. These facts prove that both Mazzio's and Saxton Pierce were aware of the existence of Dobieco operating as an integral part of the Debtor's business. There appears to be nothing intentionally fraudulent about the Debtor's failure to disclose the transfer to Mazzio's, especially in light of Dobieco's open existence and active role in the operation of the business:

The Debtor's transfer did occur shortly after a substantial debt was incurred to Saxton Pierce. However, the transfer did not result in a decrease in funds available to pay Saxton Pierce, since Dobieco undertook to pay the rent payments. Rather, the Debtor's ability to pay Saxton Pierce depended on the cash flow of the business.

The Court also finds that the value of the consideration received by the Debtor was reasonably equivalent to the value of the asset transferred. This finding will be further discussed under the Court's constructive fraud analysis below.

The other badges of fraud are inapplicable to this case. When the transfer oc-

curred, the Debtor was not being threatened with a lawsuit, and the lease certainly did not represent a substantial portion of the Debtor's assets from which creditors could satisfy claims. The Debtor did not abscond, having paid more than $137,000.00 on the equipment lease to Saxton Pierce. The evidence in this case does not point to fraudulent actions by the Debtor to remove valuable assets from the reach of creditors, particularly Saxton Pierce. Nor was there evidence either that the assignment of the lease rendered the Debtor insolvent or that the Debtor transferred the essential assets of the business to a lienor who then transferred the assets to the Debtor's corporation.[3]

In short, the traditional badges of fraud as they are meant to be applied under the statute are not present in this case. Therefore, the Trustee has failed to proved intent, and his actual fraud theory fails.

## CONSTRUCTIVE FRAUD

■ A transfer may be set aside as a technical fraud simply by showing that the transfer was made for less than the reasonably equivalent value when the debtor was insolvent or became insolvent as a result of the transfer. The facts in this case are unique, and both the actual and constructive fraud theories advanced by the Trustee depend on whether the transfer of the real estate lease to Dobieco was for reasonably equivalent value.

The Fraudulent Transfer Act provides that "value" is given for a transfer "if, in exchange for the transfer ... property is transferred or an antecedent debt is se-

cured or satisfied ..." Ark.Code Ann. § 4–59–203(a) (Michie 1996). Similarly, the Bankruptcy Code's definition of "value" pursuant to its fraudulent transfer statute is "property, or satisfaction or securing of a present or antecedent debt of the debtor...." 11 U.S.C. § 548(d)(2)(A) (1994).

■ If the transfer in question did not deplete the estate of assets available to pay unsecured creditors, the debtor received reasonably equivalent value. *Harman v. First American Bank of Maryland (In re Jeffrey Bigelow Design Group, Inc.),* 956 F.2d 479, 484 (4th Cir.1992); *Ouachita Elec. Coop. Corp. v. Evans–St. Clair,* 12 Ark.App. 171, 179, 672 S.W.2d 660, 665 (1984) (stating that an element of a fraudulent conveyance is that the property disposed of might have otherwise been subject to satisfaction of creditors' claims).

The Trustee argues that the assignment of the lease from the Debtor to Dobieco was for no consideration (Br. at 12, 16) and that the assignment constituted substantially all of the Debtor's assets. (Br. at 11.) The Court respectfully disagrees. The value of the Debtor's leasehold interest was first established by Saxton Pierce and Mazzio's, Inc. in December 1995. Pursuant to an arm's length transaction, the lessee (Saxton Pierce) was given the right to occupy a pizza restaurant in Paragould, Arkansas, for a period of seven years in consideration of an agreed sum of $1,887.00 per month.

The value of the lease was reaffirmed in a second arm's-length transaction between

---

**3.** The Trustee argues further that the Debtor and Paul Brown were untruthful with regard to when the documents were executed in implementation of the plan set forth in Paul Brown's letter to the Debtor. The Trustee asks the Court to find that the assignment from the Debtor to Dobieco occurred after the Debtor's bankruptcy petition was filed and after the Debtor realized that the Trustee could assume the lease as property of the estate. While it is possible that the pertinent documents could have been falsified as to date with the purpose of defeating the Trustee's right to assume, the Court finds no persuasive evidence in the record that such was the case.

Saxton Pierce and the Debtor in February 1997 when Saxton Pierce assigned the lease to the Debtor for the same agreed consideration of $1,887.00 per month. There is no evidence in the record to support the Trustee's argument that the third assignment of the same lease a few weeks later by Debtor to Dobieco had any more value than the original lessor and lessee attributed to it.[4]

The Debtor transferred his right to possession of the premises in Paragould, Arkansas, but he also was relieved of the obligation to pay the lease payments of $1,887.00 per month. The assumption of the Debtor's obligation to pay the monthly rent fits easily within the definition of value under state and federal bankruptcy law. In each of the three transactions involving the lease of the restaurant space, the parties themselves determined the value given for the transfer to be reasonably equivalent.

The Trustee argues that proof that the lease is more valuable than its stated consideration is Saxton Pierce's offer to pay the Trustee $25,000.00 for an assignment of the lease in this bankruptcy case. However, this bootstrap argument has no merit. The obvious motivation of Saxton Pierce is not to acquire the lease to satisfy its claim, but to do damage to Dobieco's ability to exercise its franchise agreement with Mazzio's and force Dobieco out of business. Furthermore, the critical time to determine reasonably equivalent value is when the transfer is made. *Cooper v. Ashley Communications, Inc.*, 914 F.2d 458, 466 (4th Cir.1990). Even if the assignment of the lease had not occurred, the lease even though technically an asset,

would not have constituted property from which unsecured creditors could have looked to satisfy their claims. *Sieb's Hatcheries, Inc. v. Lindley*, 111 F.Supp. 705, 715 (W.D.Ark.1953) (ruling a fraudulent transfer may not be set aside unless the property conveyed was subject to satisfaction of the complaining creditor's debt) (citing *Mente & Co. v. Westbrook*, 181 Ark. 96, 102, 24 S.W.2d 976, 978 (1930)), *aff'd*, 209 F.2d 674 (8th Cir.1954); *Ouachita Elec. Coop. Corp. v. Evans–St. Clair*, 12 Ark.App. 171, 179, 672 S.W.2d 660, 665 (1984) (same).

## CONCLUSION

Most of the typical elements associated with a fraudulent transfer are not present in this case. Saxton Pierce made the decision to sell the so-called "blue sky" of its pizza restaurant to Debtor entirely on unsecured credit. It was also Saxton Pierce that disguised the transaction in order to gain a tax advantage to which it was perhaps not entitled.[5] It is doubtful that either of the parties could have foreseen at the time of sale, much less intended, the transaction to turn out the way it has.

Like a player in a game of chess, Saxton Pierce simply failed to contemplate the next move the Debtor would be entitled to make. Saxton Pierce could have secured the Debtor's obligation to pay so as to be entitled to a return of the pizza franchise and leasehold to it in the event of a default by the Debtor, but it failed to do so. The Debtor's action in assigning the real estate lease to a corporation and securing the franchise in the name of the corporation is not prohibited by the agreement drafted

---

4. The lease expires by its own terms in January 2002.

5. The sale was structured in this fashion to enable Saxton Pierce to avoid payment of capital gains tax on "a couple hundred thousand or more" according to Kelly Saxton of Saxton Pierce. (Tr. at 93.)

by Saxton Pierce, and under these circumstances, does not constitute actual or constructive fraud.

Therefore, for the reasons stated herein, the Trustee's counterclaim is dismissed and Judgment will be entered in favor of Dobieco determining the real estate at issue is not property of the estate, and the lease may not be assumed by the Trustee.