**In re Kathleen INMON, Debtor.**

**No. 96–43020M.**

United States Bankruptcy Court,
E.D. Arkansas,
Western Division.

Nov. 27, 1996.

---

Susan Gordon Gunter, North Little Rock, AR, for Mercantile Bank Bldg.

Stephen Bennett, Sherwood, AR, for debtor.

## ORDER DISMISSING CASE

JAMES G. MIXON, Bankruptcy Judge.

This case is before the Court upon a motion filed by Mercantile Bank (Mercantile) to dismiss the Chapter 13 petition of Kathleen Inmon (Debtor). Mercantile,[1] the principal creditor in the case, cites bad faith and fraud on the court as cause for dismissal pursuant to 11 U.S.C. § 1307(c) (1994). After a hearing on the motion on October 4, 1996, the matter was taken under advisement. For the reasons stated below, the Court grants the motion and dismisses the case with prejudice.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (1994), and the Court has jurisdiction to enter a final judgment in the case.

## BACKGROUND

The Debtor has filed two previous bankruptcy proceedings. The following history of her previous bankruptcy cases, as well as the history of litigation in state court, is relevant to the arguments presented by the parties.

### Chapter 7  Filed October 18, 1991

The Debtor filed her first petition for relief under the provisions of Chapter 7 of the Bankruptcy Code on October 18, 1991. The Debtor's schedules listed "cash on hand" in the sum of $10.00. The Debtor claimed a homestead exemption in property located at 2600 Northeastern, Jacksonville, Arkansas. The property was valued at $65,000.00 and encumbered by a mortgage in favor of Pulaski County Mortgage in the sum of $43,-617.89. At the time the petition was filed, the Debtor was not residing at the property claimed as exempt, but was living in a house located at 7500 Toltec in North Little Rock, Arkansas. The Debtor's schedules did not reflect any ownership interest in the 7500 Toltec property.

Mercantile objected to the Debtor's claim of homestead exemption arguing that the debtor had abandoned her homestead. The Bankruptcy Court overruled the objection and made the following finding:

> ... In the instant case, there has been no showing that the Debtor intended to abandon her homestead. The debtor testified that she intended to return to the 2600 N. Eastern residence. The debtor presented a demeanor consistent with truthfulness; the Court believes the debtor.

Also in connection with the Debtor's Chapter 7 case, Mercantile filed a complaint to determine the dischargeability of a scheduled debt for the sum of $59,377.67, which resulted from a deficiency judgment Mercantile had previously obtained against the Debtor. The matter was resolved in favor of Mercantile on November 18, 1992, when the bankruptcy court entered a consent order finding that:

> The Debtor obtained the two construction loans from the Plaintiff for the specific purpose of constructing the Homes. The Debtor had an account at the Plaintiff bank into which construction loan advances were deposited, based upon stages of construction completed. The Debtor committed a defalcation while acting in a fiduciary capacity by using the specific construction funds deposited into this account on other construction projects (in which the Plaintiff had no interest) or for other personal uses.
>
> ... The debtor agrees that the debt owed to the Plaintiff as of the date of filing of the Chapter 7 Petition in the amount of $59,377.67 (the "Debt") remains due and owing pursuant to the terms of the Decree of Foreclosure.

After fully administering the estate, the trustee reported gross receipts of $4,798.08. The Debtor received a Chapter 7 discharge on January 12, 1993.

### Chapter 13  Filed January 15, 1993

On January 15, 1993, just three days after the discharge was entered in her Chapter 7

---

**1.** Mercantile Bank was formerly known as Twin City Bank.

case, the Debtor filed a voluntary petition for relief under the provisions of Chapter 13 in which she sought to discharge the $59,377.67 debt to Mercantile. The Debtor did not list any real property as an asset on the Chapter 13 schedules. A few weeks later, on February 5, 1993, the Debtor voluntarily dismissed her petition on her own motion.

### State Court Actions

As a result of facts uncovered during the course of the Debtor's Chapter 7 case, Mercantile filed an action in the Chancery Court of Pulaski County, Arkansas, against the Debtor; Mary Dillon, the Debtor's daughter; and Dorothy Johnson, the Debtor's aunt, to set aside a fraudulent conveyance by the Debtor of the property at 7500 Toltec. On December 16, 1994, Chancellor Robin L. Mays entered a decree finding that Kathleen Inmon was the true and equitable owner of the real property located at 7500 Toltec, North Little Rock, Arkansas.

The chancellor made the following findings:

15. From May 9, 1991, until March 25, 1992, the total deposits in Superior Federal Account 53–130838–6 . . . in the name of Mary C. Dillon[ ] were $55,936.00.

16. Three deposits were made from checks payable to Inmon for proceeds from the fire at 2600 Northeastern: on October 15, 1991, for $15,709.71; . . . on November 18, 1991, for $8,293.25, and December 11, 1991, for $9,362.58.

17. Ninety-six percent (96%) of the deposits made to Account 838–6 were checks made payable to Kathleen Inmon and cash deposits of approximately $17,000.00 for a total of $53,711.00.

18. It is the finding of the court that Inmon deposited cash in the amount of $17,361.10 into Account 838–6 and fraudulently conveyed those funds to Dillon to avoid creditors.

. . . .

22. All cash deposits to Account 838–6 and cash payments for the construction of # 13 Woodbrier were from the cash funds from the sale of Inmon's father's land and the back alimony payments.

. . . .

26. On July 17, 1991, Inmon negotiated the price of the lot at 7500 Toltec with Ron Tyne of Winrock and advised him the property would be titled in Dillon's name.

27. On July 22, 1991, 7500 Toltec was purchased for $10,429.33. Winrock received two cashier's checks for the purchase price, and the property was titled in Dillon's name.

28. Inmon filed bankruptcy on October 18, 1991.

29. On November 7, 1991, Account 676–3 was opened in the name of M.C. Dillon.

30. The total deposits in Account 676–3 were $43,558.98. Ninety-nine percent (99%) of those deposits were from the sale of # 13 Woodbrier on January 24, 1992 and $1,639.00 in cash deposits.

. . . .

34. The evidence was sufficient to establish that Inmon used her cash funds to build 7500 Toltec, which was titled in Dillon's name; checks were written on Dillon's accounts for construction of 7500 Toltec; and the funds in Dillon's accounts were transfers from Inmon. It is clear to this court that these transfers were made with the "actual intent to hinder, delay, or defraud" plaintiff.

The Debtor appealed the chancellor's decision. On July 8, 1996, the Arkansas Supreme Court dismissed the appeal as moot because the property in question had been deeded to the Debtor. *Dillon v. Twin City Bank*, 325 Ark. 309, 311, 924 S.W.2d 802, 803 (1996).

On July 25, 1996, a notice of sheriff's sale was issued pursuant to the order of the chancery court to sell the Debtor's property located at 7500 Toltec. The sale was set for August 16, 1996, at 12 o'clock noon.

### Chapter 13 Filed August 7, 1996

On August 7, 1996, nine days before the sale of the 7500 Toltec property was to take place, the Debtor filed this Chapter 13 case, claiming the 7500 Toltec property as an exempt homestead. The plan attached to the petition proposes to pay $223.00 per month

for thirty-six months. The schedules list only unsecured, nonpriority creditors with claims totaling $69,675.42. Mercantile is scheduled as the largest creditor holding a disputed claim of $59,377.67.

In support of its motion to dismiss, Mercantile argues that in the two previous bankruptcy proceedings the Debtor fraudulently concealed ownership of the 7500 Toltec property and that the Debtor now claims the same fraudulently concealed property as her exempt homestead in this Chapter 13 case. Mercantile argues that the Debtor's conduct constitutes bad faith warranting dismissal of this case.

## DISCUSSION

■■■ Section 1307(c) provides in part that "on request of a party in interest … the court … may dismiss a case under this chapter … for cause." 11 U.S.C. § 1307(c) (1994). Although good faith is not a statutory requirement for eligibility for relief under Chapter 13, lack of good faith in filing a Chapter 13 petition constitutes cause under 11 U.S.C. § 1307(c) to dismiss a case. *Molitor v. Eidson (In re Molitor),* 76 F.3d 218, 220 (8th Cir.1996) (citing *Eisen v. Curry (In re Eisen),* 14 F.3d 469, 470 (9th Cir.1994)); *In re Smith,* 848 F.2d 813, 816 n. 3 (7th Cir.1988); *Simmons v. Simmons (In re Simmons),* 149 B.R. 586, 588–89 (Bankr.W.D.Mo. 1993); *In re Belden,* 144 B.R. 1010, 1019 n. 14 (Bankr.D.Minn.1992). In determining bad faith the focus is on the totality of the circumstances including whether the debtor has stated his debts and expenses accurately, whether the debtor has made fraudulent representations to mislead the bankruptcy court, and whether the debtor has unfairly manipulated the bankruptcy code. *Molitor,* 76 F.3d at 220, 221. *Handeen v. LeMaire (In re LeMaire),* 898 F.2d 1346, 1349 (8th Cir.1990) (en banc).

In this case, the Debtor has failed to state her debts accurately. She treats Mercantile's claim as unsecured despite the existence of Mercantile's judgment lien resulting from a judgment filed in Pulaski County, Arkansas, against the Debtor and a lis pendens notice Mercantile filed in connection with the fraudulent conveyance suit pending in chancery court. *See* Ark.Code Ann. § 16–65–117 (Supp.1995); *Clark v. Bank of Bentonville,* 308 Ark. 241, 244, 824 S.W.2d 358, 360 (1992). Under the Debtor's plan to pay $223.00 per month for thirty-six months, Mercantile has been unfairly and inaccurately reduced to the status of an unsecured creditor receiving only a small fraction of its claim.

Moreover, the Debtor's pre-filing conduct includes fraudulent representations designed to mislead the bankruptcy court. In her Chapter 7 case, she fraudulently concealed her ownership of 7500 Toltec and a significant amount of cash. She successfully claimed other property as a homestead even though she actually resided at that time in the property in which she is now claiming a homestead exemption. Furthermore, at a hearing on Mercantile's objection to her homestead exemption, the Debtor did not disclose her secret ownership of 7500 Toltec to the bankruptcy court. In her first Chapter 13 case in 1993, the Debtor again fraudulently misrepresented her ownership in her homestead by not listing 7500 Toltec as an asset.

■■■ The Debtor has also unfairly manipulated the bankruptcy code. After the Chancery Court of Pulaski County unmasked the Debtor's fraud, the Debtor caused title to 7500 Toltec to be conveyed to her. But when Mercantile scheduled sale of the property to satisfy a judgment in its favor in an amount agreed to by the Debtor in a consent order, she filed the current petition for relief under the provisions of Chapter 13. The Debtor claimed as her exempt homestead, the property located at 7500 Toltec, the very property she constructed through a fraudulent conveyance scheme and concealed in her two previous bankruptcies.[2] Thus the Debtor at-

---

2. Although the issue of whether the Debtor can properly claim the 7500 Toltec property as an exempt homestead is not directly before the Court, the allowance of the exemption is questionable. The Debtor has physically resided at 7500 Toltec since before the filing of the initial Chapter 7 case in October 1991. She successfully convinced Judge Scott that she had a different homestead in 1991 and, until she caused title to the 7500 Toltec property to be conveyed to her-

tempts to use the bankruptcy code as a tool to reap the benefits of her fraud.

The totality of circumstances, including the Debtor's inaccurate characterization of the indebtedness owed to Mercantile, her fraudulent representations designed to mislead the bankruptcy court, and her unfair manipulation of the provisions of Chapter 13, establishes that she filed her petition in bad faith sufficiently egregious to warrant dismissal of this case with prejudice.

Therefore, Mercantile's motion to dismiss is granted with prejudice.

IT IS SO ORDERED.

self in 1994, she asserted in both the chancery court and the bankruptcy court that she held no ownership interest in the property. Under these circumstances she is not entitled to now claim a homestead exemption because of the principles of judicial estoppel. *See Daley v. City of Little Rock,* 36 Ark.App. 80, 818 S.W.2d 259 (1991) (judicial estoppel is a doctrine whereby a party may be prevented from taking inconsistent positions in successive cases with the same adversary); *Monterey Dev. Corp. v. Lawyer's Title Ins. Corp.,* 4 F.3d 605, 609 (8th Cir.1993) (" 'the doctrine [of judicial estoppel] may be invoked to prevent a party from playing "fast and loose with the courts" ' "); *Rickner v. Rickner,* 283 Ark. 42, 670 S.W.2d 450 (1984) ("a party cannot invoke a court's jurisdiction to obtain a benefit and then complain, in order to obtain an additional benefit, that the court has no jurisdiction").