**In re SOUTHERN HEALTH CARE OF ARKANSAS, INC., Debtor.**

**William S. Meeks, Trustee, Plaintiff,**

**v.**

**Healthcorp of Tennessee, Inc.; Don Howard Charitable Remainder Trust; Don G. Howard, M.D.P.A.; Shirley Williams, Circuit Clerk of Dallas County, Arkansas; Don G. Howard; Don G. Howard Revocable Trust, Defendants.**

**No. 5:02–BK–21250.**

United States Bankruptcy Court, E.D. Arkansas, Pine Bluff Division.

Oct. 6, 2003.

Thomas Streetman, for William S. Meeks, Chapter 7 Trustee.

Floyd Thomas, for defendants.

Norman M. Klappenbach, for Shirley Williams.

## MEMORANDUM OPINION

RICHARD D. TAYLOR, Bankruptcy Judge.

The trustee, William S. Meeks ("Trustee"), seeks to avoid a series of monthly payments made by the debtor, Southern Healthcare of Arkansas, Inc., to the Don G. Howard Charitable Remainder Trust ("Trust") and its immediate or mediate transferee, Dr. Don G. Howard. These transfers occurred during the three-year period prior to the debtor's October 3, 2003, bankruptcy filing. For the reasons stated below, the Trustee is granted judgment solely against the Trust in the amount of $121,918.58.

### JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H). The following order constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

### RELEVANT FACTS

The predicate facts involve the jointly operated but legally distinct medical practices of Dr. Don G. Howard ("Howard") and Dr. Hugh Nutt ("Nutt"). In the years prior to December 1997, Nutt and Howard individually practiced medicine in a building they jointly owned as tenants in common in Fordyce, Arkansas, generally known as the diagnostic clinic. For convenience and cost-effectiveness, most of the furniture, equipment, and fixtures were jointly owned. The events of December 1997 precipitated litigation between the two doctors, limited parts of which are pertinent to the causes of action asserted by the Trustee.

In 1997, Healthcorp of Tennessee, Inc. ("Healthcorp"), began to negotiate with Howard for the purchase of his one-half

undivided interest in the physical assets of the diagnostic clinic. There is some dispute as to whether Nutt enjoyed the same sale opportunity and, if so, on what terms. That question was tangential to litigation between the two doctors and need not be disposed of in this proceeding. Nevertheless, a sale of Howard's one-half interest was negotiated and consummated in December 1997. Healthcorp also operated the Dallas County Hospital located in Fordyce, Arkansas, pursuant to a lease agreement with Dallas County, Arkansas. The Dallas County Hospital did not enjoy a separate or distinct legal existence; at least three entities operated the hospital d/b/a Dallas County Hospital: Healthcorp, Southern Healthcare of Alabama, Inc., and the debtor.

A series of transactions took place in December 1997. First, Howard transferred his individually owned one-half undivided interest in the diagnostic clinic to the Don G. Howard Revocable Trust. That trust in turn transferred the property to the Don G. Howard Charitable Remainder Trust ("Trust"). Then, through a warranty deed and bill of sale, the Trust transferred what had originally been Howard's interest in the diagnostic clinic to Healthcorp. Healthcorp executed a $400,000.00 note to the Trust secured by a mortgage in favor of the Trust. The note was to be paid in monthly increments of $6537.59. In turn, Howard continued to use the physical premises through a lease back arrangement between Don G. Howard, M.D., P.C., and Healthcorp.

Healthcorp continued to manage the Dallas County Hospital and made its monthly payments to the Trust on a fairly regular basis. On May 1, 1998, Healthcorp transferred its lease with Dallas County for the operation of the hospital to a nonprofit entity, Southern Healthcare of Alabama, Inc. Healthcorp continued to manage the hospital and pay bills pursuant to a management contract with Southern Healthcare of Alabama, Inc. Farrell Hayes, the CEO of Healthcorp, testified that the consideration for the transfer was $2,000,000.00.

After the transfer, Southern Healthcare of Alabama, Inc., undertook to make Healthcorp's note payments to the Trust. Subsequently, in March 1999, Southern Healthcare of Alabama, Inc., assigned the lease under which it operated the hospital to the debtor, Southern Healthcare of Arkansas, Inc. Again, Healthcorp continued its management functions under the management contract with Southern Healthcare of Alabama, Inc., which was also assigned to the debtor. Farrell Hayes testified that he wrote checks for all three entities as part of his management functions with Healthcorp, but that each check was written on the account of each separate entity.

Like Southern Healthcare of Alabama, Inc. before it, the debtor started making Healthcorp's monthly note payments to the Trust. This began in March 1999. Healthcorp never deeded or otherwise transferred its ownership of the diagnostic clinic assets to either Southern Healthcare of Alabama, Inc. or the debtor. Further, there was no testimony or evidence introduced to reflect any contract, agreement, bookkeeping entry, or commensurate offset that would reflect that Healthcorp was either obligated presently or subsequently to transfer the diagnostic clinic to the debtor, or that the debtor received any consideration from Healthcorp for undertaking the monthly payments. It is these payments, commencing in March 1999, that the Trustee seeks to avoid. Additionally, using 11 U.S.C. § 550, the Trustee seeks to recover payments from the Trust to Howard during the same period.

Subsequent to the events of December 1997, Nutt brought two lawsuits. The first involved his concern over the effect the original sale from Howard (in reality, the Trust) to Healthcorp might have on his interest in the diagnostic clinic. That suit was dismissed and led to a second complaint, which was a partition action involving the diagnostic clinic. In that suit, the Dallas County Circuit Court found that Healthcorp remained record title owner of what had previously been Howard's ownership in the diagnostic clinic. Because partition in kind was unfeasible, the court ordered a sale of the property. Nutt was the only bidder at the sale and bid $200,000.00 for both the real and personal property. After deducting the costs of the sale, one-half of the proceeds—approximately $97,000.00—was paid back to Nutt representing his half interest. The remaining half—$97,638.10—was placed in the registry of the Dallas County Circuit Court. The Trustee seeks this amount as representing avoidable payments. As explained below, this amount does not represent avoidable payments, but, rather, can be directly traced to the proceeds of the partition sale and, accordingly, is owed to Healthcorp subject to the lien and interest of the Trust.

ACTUAL OR CONSTRUCTIVE FRAUD

 made prepetition may be avoided by creditors pursuant to 11 U.S.C. § 548, or, under state law, pursuant to Arkansas Code Annotated § 4–59–204, on the basis of actual or constructive fraud. Actual fraud requires a finding that the transfer was made with the "actual intent to hinder, delay, or defraud ...." 11 U.S.C. § 548(a)(1)(A); Ark.Code Ann. § 4–59–204(a)(1) (Repl.2001). It is clear to the to the Court that these sections are inapplicable in this case. Simply stated, there is insufficient evidence to reflect fraud either directly or through the typical badges of fraud. *See, e.g.,* Ark.Code Ann.

§ 548(b) (Repl.2001). The absence of an explanation why the debtor would undertake these payments is not sufficient to justify a finding of fraud. *Dobieco, Inc. v. Brown (In re Brown),* 265 B.R. 167, 171 (Bankr.E.D.Ark.2001) (under Arkansas law, fraud must be proved by preponderance of evidence). The Trustee made wholly unsubstantiated allegations that the debtor and Howard engaged in a scheme to commit Medicaid fraud through a mischaracterization of the note payments. The evidence was simply insufficient to establish actual intent to commit fraud by the debtor acting on its own or in conjunction with Howard.

This leaves the Court with the issue of constructive fraud under both the bankruptcy code and as contemplated in the Arkansas fraudulent conveyance act. The elements of constructive fraud under § 548 are as follows:

(a)(1) the trustee may avoid any transfer of an interest of the debtor in property, ... that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

...

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(III) intended to incur, or believe that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548(a)(1). The Arkansas fraudulent transfer act contains almost identical language, as follows:

> (a) a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> . . .
>
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (ii) intended to incur, or believe or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Ark.Code Ann. § 4–59–204(a) (Repl.2001). Under the Arkansas act, a cause of action with respect to an alleged fraudulent transfer expires unless the action is brought within three years after the transfer was made. Ark.Code Ann. § 4–59–209 (Repl.2001). The Trustee has standing to bring this action by virtue of the strong-arm provisions of § 544(b)(1) and Arkansas Code Annotated § 4–59–204, and may avoid transfers that occurred within three years prior to the petition filing date, October 3, 2002, pursuant to 11 U.S.C. § 108(a).

## ELEMENTS

■ The primary element under both the bankruptcy code and Arkansas law is whether the transfers made were for less than reasonably equivalent value. The monthly payments made by the debtor to the Trust, which are the operative transfers, began in March 1999. The Trust asserted that the operative transfer date was that of the original real estate transaction in December 1997. However, the December 1997 transaction involved Healthcorp and the Trust, and occurred before the debtor was even in existence as a corporate entity. The payments related to the Trustee's cause of action are those made by the debtor after it commenced operations in March 1999.

In this case as presented, the evidence does not require that the Court weigh the equivalency of competing values or adequacy of consideration. The record is devoid of any value or consideration enuring to the benefit of the debtor for undertaking Healthcorp's monthly payments to the Trust. In December 1997 the Trust transferred to Healthcorp by warranty deed and bill of sale the one-half interest originally held by Howard in the diagnostic clinic. Healthcorp in turn executed a mortgage back to the Trust to secure the note payments. The parties stipulated that title to the property at all times remained in Healthcorp. There was never a transfer to the debtor. In fact, the court in the Dallas County partition action expressly found in its order filed May 15, 2002, that Healthcorp was still the record owner subject only to the Trust's mortgage interest.

Since March 1999, the debtor paid the Trust $174,219.30 in monthly payments. The debtor was not obligated to the Trust under the terms of the promissory note or mortgage, and there was no evidence that any agreement existed compelling Healthcorp to transfer the property to the debtor in consideration of the debtor undertaking the remaining payments. The Trust did not introduce any evidence to reflect that there may have been corresponding balance entries that demonstrated any consideration given to the debtor, such as the debtor receiving credit against any debt or obligation it might have to Healthcorp.

Any argument that the monthly rental payments of $2295.65 represents value fails because (1) the amount is clearly insufficient when measured against the monthly note payment, and (2) sufficient evidence was introduced to demonstrate that the rent payments had never been posted to the books of the debtor, or for the benefit of the debtor (such as might have been proven by a review of Healthcorp's books and records). In sum, there simply was no evidence presented to substantiate any value or consideration given to the debtor for undertaking these payments.

The Trustee also introduced sufficient evidence to prove the second element under both the bankruptcy code and state law concerning insolvency, insufficient capital, or an inability to address debt service. There is no question that the debtor, d/b/a Dallas County Hospital, was insolvent and consistently demonstrated significant net operating losses throughout the applicable period. The proof in this regard began with the financial statement prepared in February 1999, just before the debtor commenced operations. No credible evidence was offered to rebut, or even contradict slightly, the Trustee's proof in this regard.

## DAMAGES

■ The parties stipulated that the debtor paid the Trust $174,219.30 between March 1999 and October 2002, the month the debtor filed its chapter 7 proceeding. Under state law, the Trustee is bound by a three-year statute of limitations, which is tolled from the date the petition is filed to when litigation is commenced pursuant to 11 U.S.C. § 108(a). Scrutiny of the checks introduced into evidence reflects that eight checks in the aggregate amount of $52,300.72 were written between March and September 1999, which is outside the statute of limitations period. Deducting that amount results in avoidable transfers in the aggregate amount of $121,918.58. Accordingly, judgment against the Trust and in favor of the Trustee is rendered in that amount, to bear interest from the date of this judgment at the maximum rate allowed by federal law.

## TRANSFEREE LIABILITY

■ Pursuant to 11 U.S.C. § 550 and Arkansas Code Annotated § 4–59–208, the Trustee also seeks to avoid and recoup transfers made by the Trust to Howard during the same time period. Howard's CPA testified that Howard was entitled to quarterly distributions from the Trust according to a fixed formula. According to the CPA's testimony, Howard received $32,000.00 in 1998, $32,565.00 in 1999, $34,211.00 in 2000, $22,702.00 in 2001, and $2708.00 in 2002.

Howard is afforded a defense under both the bankruptcy code and Arkansas law to the extent that he, as a subsequent transferee, accepts the transfer in good faith and for value (and, under the code, if without knowledge of the avoidability of the transfer). 11 U.S.C. § 550(b)(1); Ark. Code Ann. § 4–59–208 (Repl.2001). This defense applies to Howard for the following reasons: first, he clearly was unaware that he was accepting payments that might be subject to a subsequent avoidance proceeding in bankruptcy; second, there is no evidence that he acted in any manner other than in good faith; and third, the principal, if not sole, asset of the Trust, the $400,000.00 promissory note from Healthcorp, represented an asset arising from transfers made to the Trust by Howard. According to Howard's CPA, the payments that Howard received from the Trust were nothing more than his right to a distribution consistent with the Internal Revenue Code regulations governing charitable remainder trusts. His antecedent transfer

of value, which later generated the above enumerated distributions back to him, suffices to afford him protection under both the bankruptcy code and state law from the trustee's reach as a subsequent transferee. 11 U.S.C. § 550(b); Ark.Code Ann. § 4–59–208(b)(2) (Repl.2001).

REGISTRY FUNDS

Finally, the Trustee also seeks the $97,638.10 held in the registry of the Dallas County clerk's office. It should be noted here that there is some confusion as to whether that amount has actually been paid to the Trust or Dr. Howard. The record is unclear in this regard. However, the Court finds no reason or legal basis to disturb the finding of the Dallas County Circuit Court to the effect that this amount is owed to Healthcorp, subject to the lien and interest of the Trust. This amount is not a result of the avoidable, and now avoided, transfers. Rather, it can be directly traced to the partition sale of the fixed tangible assets of the diagnostic clinic owned by Healthcorp, subject to the lien in favor of the Trust. Accordingly, to the extent that this Court has jurisdiction over this fund, the fund should be turned over to the Trust as directed by the Dallas County Circuit Court.

Based on the above memorandum opinion, the Court finds that the trustee, William S. Meeks, is entitled to a judgment against the Don Howard Charitable Remainder Trust in the amount of $121,918.58, plus interest from the date of the judgment at the maximum rate allowed by federal law. The Court further finds that each party shall bear their own costs and attorney's fees. The Trustee may file an application seeking his costs and fees from the judgment fund.

IT IS SO ORDERED.